DANIEL R. BRANT

*v.*

BENJAMIN E. GALLUP *et al.*

*Filed at Ottawa January 22, 1885.*

1. APPEAL—*as to the amount involved—on agreement to keep property insured.* In an action for an alleged breach of an agreement to keep insured a building of the insurable value of $125,000, which was burned, and whereby the owner lost that sum, where the evidence in the record showed the value of the property, it was *held*, that an appeal would lie to this court from the final judgment of the Appellate Court affirming a judgment for the defendants.

2. SAME—*how to determine as to the amount involved.* In an action to recover damages from the breach of a contract to insure and keep insured a theatre building, during the life of a mortgage given on the same by the owner, the Appellate Court affirmed the judgment for the defendants. On application by the plaintiff for an appeal, a motion was made for a certificate of that court finding the amount involved, and the plaintiff, in support of his motion, filed his affidavit stating that his claim was for $125,000, for the breach of the agreement to insure: *Held*, that this court might look to such affidavit as showing the amount in controversy, as well as to other evidence appearing in the record as to the value of the property.

3. EVIDENCE—*matters explanatory of letters given in evidence.* Where a party's letters to one not a party to the suit, are given in evidence against him, to disprove the existence of the contract claimed by him, he may show the circumstances under which they were written, but he can not testify, generally, as to his intentions or purpose in writing them, and thereby avoid their effect as a statement or declaration of the facts contained in them.

4. PLEADING AND EVIDENCE—*proof as to matters alleged as inducement to the making of a contract.* Where a plaintiff, in his declaration, alleges the making of a mortgage by him to secure a loan, with an insurance clause, as inducement to the making of a contract with the agents of the mortgagor to insure the property, such inducement must be proved as alleged.

5. SAME—*generally, proof must establish contract declared on.* If the evidence fails to establish the contract declared on, the plaintiff can not recover; and there is no error in so instructing the jury.

6. ERROR WILL NOT ALWAYS REVERSE—*as to the giving of instructions.* Although some of the instructions given on the trial of a cause may be irrelevant to the issues involved, and others may not be precisely accurate, yet if they are not such as to mislead the jury to the injury of the other party, this court will not reverse the judgment for that cause alone. ·

7. SAME—*irrelevancy of instruction—and as containing a mere abstract proposition of law.* In an action by the owner of a building which had been destroyed by fire, against certain loan agents, to recover damages for a breach of a contract on their part to insure the building, a mortgage on the premises securing the loan providing he should keep the property insured, the court instructed the jury that any unwritten agreement made at the time of the execution of the mortgage, or just preceding, between the owner and the mortgagee, or the owner and the agents, that the mortgagee would himself keep the property insured, was inconsistent with the clause in the mortgage, and would have been unavailable as a defence to a suit to foreclose the mortgage, and that no benefit could accrue to the owner from such a pretended agreement: *Held,* that the matters stated in the instruction, except the last clause, were wholly foreign to every issue in the case, but being a mere abstract proposition, could not have misled the jury.

8. INSTRUCTIONS—*reforming instructions which are objectionable as to matters of form.* Where a party asked, and the court gave, twenty-five instructions, some of them lengthy, and some in whole or in part repetitions, and others irrelevant and obscure, it was *held,* that it would have been proper if the court had reconstructed them, so as to free them from redundancy, verbiage, and all foreign matter, and reduced them to a few clear and perspicuous legal propositions upon which the case turned. Proper practice would require the court to refuse all but one instruction, when they repeat the same proposition.

9. CONTRACT—*what will amount to a contract—expression of an opinion by one sought to be held liable.* The mere expression of an opinion by one of two loan agents effecting a loan on mortgage security, as to the meaning of an insurance clause in the mortgage,—as, that it required them or their principal, the mortgagor, to effect an insurance,—can not operate to render such agents liable for a failure to insure the property. That can be done only by an agreement to insure entered into between the parties, and understood and intended by them to be binding.

10. SAME—*effect of an assurance of a loan agent as to the meaning of a clause in a mortgage relating to insurance of the premises—as creating a contract.* Where a party gives a mortgage for a loan, containing a clause requiring him to keep the buildings insured, the assurance of the loan agents to him that such clause required the mortgagee, or the loan agents, as the agents of the latter, to effect the insurance for him, will not constitute a contract between the mortgagor and the agents, for them to effect the insurance; and in an action by the mortgagor, after a loss by fire, against the agents, to recover for a breach of an alleged contract to insure for the plaintiff, it is not error to instruct the jury that such an agreement is inconsistent with the insurance clause in the mortgage, and constituted no defence to a foreclosure of the mortgage. Such instruction is simply irrelevant.

11. SAME—*effect of verbal agreement which is inconsistent with written contract.* Where a party gives a mortgage to secure a loan, in which he covenants to keep the property insured, a verbal contract entered into at the same time with the agents effecting the loan, to keep the property insured for the mortgagor, is not inconsistent with the insurance clause in the mortgage. But an agreement that the mortgagee or his agents will perform the duty imposed by the covenant on the mortgagor, would be inconsistent with the covenant, and not binding. A mere verbal agreement or understanding can not change or abrogate a party's covenant by deed.

12. SAME—*duty of party to supply omission of performance by another, to avoid loss from such omission.* A party is not entitled to recover damages for a breach of a contract which he might have prevented, after knowledge of the breach, with time and opportunity to provide against the same. So if a party has employed another to effect an insurance upon his property, and has notice of the neglect to do so by his agent in ample time to procure the insurance himself, and neglects to do so, he can not recover for a loss he may sustain by reason of such neglect.

13. SAME—*waiver by accepting partial performance.* If a party employs another as his agent to procure an insurance upon his property, and the latter directs an insurance agent to issue a policy, and when called on the owner pays the premium, and makes no objection to the amount of the insurance, and does not order a further insurance for a greater sum, it will be taken that the amount his agent ordered is satisfactory to him, and he can not recover of his agent for a failure to insure him in a larger amount.

14. SAME—*acts constituting a release from performance.* Where one employed to procure an insurance on the property of another during the existence of a mortgage thereon, fails to perform his contract for certain years, and the owner assumes that duty himself for those years, he will absolve the other party from his duty under the contract, and waive its performance.

15. MEASURE OF DAMAGES—*breach of contract to keep property insured—when no actual loss occurred.* Where a person is employed to insure buildings for another during the time a mortgage had to run, being five years, and neglected to do so for a given year, in which no loss occurred, an action lies for the breach, but no more than nominal damages are recoverable, as no actual injury is sustained by such breach.

16. LIMITATION—*for breach of a parol contract to procure insurance.* Where a party agrees with the owner of a lot to keep the buildings thereon insured for five years, and neglects to do so, no recovery can be had for the breach after five years have elapsed.

APPEAL from the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

This was an action on the case, brought on the 6th day of October, 1876, by Daniel R. Brant, against Benjamin E. Gallup and Francis B. Peabody. The declaration substantially avers that Gallup & Peabody were loan agents, and on April 1, 1869, negotiated a loan from one Bourne, to Brant, of $45,000, payable in five years, and for security to Bourne took Brant's mortgage on certain property and the Dearborn theatre, in Chicago; that Brant, in consideration of taking the loan and executing the mortgage, and $2500 commissions paid to Gallup & Peabody, employed them, and they agreed with him, to procure to be insured, and to keep insured during the life of the mortgage, the said theatre building, against loss or damage by fire, in good and responsible insurance companies, to the amount of its fair insurable value,—the plaintiff, on notification and request, to pay the premiums; that the fair insurable value of the theatre was $150,000; that the defendants failed and neglected to perform their duties in the above named respects, and that during the life of the mortgage, and on October 9, 1871, the Dearborn theatre was destroyed by fire, and by reason of the premises the plaintiff lost the fair insurable value of the building.

There were three trials in the case, the first resulting in a verdict for plaintiff for $73,666.66, the second and third in verdicts for the defendants. The judgment on the last verdict was, on error, affirmed by the Appellate Court for the First District, and the plaintiff appealed to this court. A motion was made to dismiss the appeal for want of jurisdiction of this court to hear the appeal.

Mr. J. LYLE KING, for the appellant.

Messrs. PADDOCK & ALDIS, and Mr. EMORY A. STORRS, for the appellees.

Mr. Justice Walker delivered the opinion of the Court:

This case is now before us on rehearing. We have reviewed the record and the grounds of our former decision with much care and patience, and given the questions the fullest and best consideration that the time at our disposal enabled us to bestow. We have labored under the disadvantage of having a large record loaded with immaterial matter, and no clear and compact statement of the facts given; but we have endeavored to fully comprehend the case and all the questions involved. With voluminous records, containing more irrelevant than pertinent matter, we find it of great difficulty to perform the task of gleaning the pertinent from the improper evidence in such cases. In cases thus prepared it can not be otherwise than mistakes will occur. Nor do voluminous and discursive arguments in all cases relieve us from the difficulty and labor in fully comprehending the case.

Before discussing the merits of the case we will dispose of the preliminary motion to dismiss the appeal. The statute provides for an appeal from judgments of the Appellate Courts in all cases *ex contractu* where the "sum or value in controversy" exceeds $1000, exclusive of costs. It appears from the transcript of the record, that on the application for this appeal a motion was made to the Appellate Court by appellant, for a certificate of the court finding the sum or amount involved in the controversy. In support of the motion, appellant filed his affidavit, in which he stated that the claim was for the value of the property lost by reason of appellees' breach of an agreement to insure it, to the extent of $125,000. This affidavit appears in the record, and we may look to it as showing the amount in controversy, and as evidence that the claim litigated exceeds $1000, exclusive of costs. (*Morris v. Preston*, 93 Ill. 215.) There is also evidence in the record that the theatre building was worth more than $125,000 at the time it was burned, and to make that its fair insurable

value.   The suit was on a contract to keep the property
insured at that insurable value, and damages were claimed
for a breach of the contract.   We think this brings the case
within the fair intendment of the statute allowing appeals
from the Appellate Court, and the motion is overruled.

On the trial a large number of letters were read in evidence,
written by appellant to Bourne, after the fire, in reference to
the loss, insurance on the property, and other matters con-
nected with the transaction.   In rebuttal, appellant offered,
in a general way, to testify to the motives which induced him
to write the letters in the manner he did, but the evidence
was rejected, the court holding he might testify to the cir-
cumstances under which they were written, but not to his
intentions or purpose in writing them as he did.   This is
assigned for error.   Appellant might, no doubt, as the court
below decided he could, have shown the circumstances under
which the letters were written, but he had no right to change
the fair and reasonable import of the letters by proving a
secret and unexpressed intention when he propounded his
claim in his letters.   That would amount to a change of the
letters, by adding to their meaning, as completely as to change
them by adding to their contents by any other kind of extrin-
sic evidence.   He might as well insist that he intended, but
accidentally omitted, to add another paragraph to any of the
letters asserting this claim.   No one will contend that could
be done, yet the same thing is sought to be accomplished by
this indirect mode.   There was therefore no error in rejecting
this evidence.

In the beginning of this investigation it might be conceded
that some of the instructions are irrelevant and others are not
precisely accurate; but this being conceded, the question still
remains, did they mislead the jury to the injury of appellant?
This is the real question presented in considering them.

The mortgage to Bourne contained the ordinary insurance
clause in such mortgages, that the mortgagor should keep

the property insured in good companies which the mortgagee might select, and in default thereof the latter should have the option of selecting and insuring at the mortgagor's expense, and the cost to be added as a part of the debt.

Complaint is made of the first of appellees' instructions. After giving a construction to the insurance clause in the mortgage, it concludes with this proposition:

"That any unwritten agreement made at the time of the execution of the mortgage, or immediately preceding its execution, between Brant and Bourne, or Brant and Gallup & Peabody, as Bourne's agents, that Bourne would himself keep the property insured, and was to have the exclusive privilege of insuring the property, and was to relieve Brant from any such duty, was inconsistent with the clause in the written instrument referred to in this instruction, and would have been unavailable as a defence to any suit brought for a foreclosure of the mortgage, and no benefits could have accrued to Brant from any such pretended agreement."

It is urged that the instruction is irrelevant, and it should not therefore have been given,—that the construction of that clause of the mortgage was wholly foreign to every issue in this case, and it should not have been given. We fully concur in this position, except the last clause in the instruction. The mortgage, its construction, or even its validity, had no bearing on this case or its issues; but it being a mere abstract proposition, we are at a loss to perceive how it could have misled the jury. But the last clause was pertinent. Appellant, in his declaration, set out as inducement, the making of the mortgage with the insurance clause, to the making of the contract averred in the declaration. It is a rule that such an inducement must be proved as averred. It was therefore proper and necessary that having averred the inducement, appellant should have proved it. He did so, and went further, and testified that Peabody assured him that

the insurance clause required Bourne, or Gallup & Peabody, to effect the insurance for him. This did not constitute a contract between appellees and appellant, nor does appellant insist that it did. He sues on an entirely different and distinct contract, and it was proper that the jury should be so informed. The last clause of the instruction virtually informed the jury that such statements did not create a contract or confer any benefit on appellant. He had averred a different agreement, and could recover on none other, much less on the inducement to the agreement averred in the declaration. Whether or not it conferred any benefit, or created a defence to a foreclosure of the mortgage, does not matter,—it created no right to recover in this action. And it was not error to inform the jury that such an agreement was inconsistent with the insurance clause, and constituted no defence to a foreclosure of the mortgage. This part of the instruction was simply irrelevant. We are of opinion that the giving of this instruction worked appellant no harm.

In this case the appellees asked, and the court gave, twenty-five instructions. Some of them are lengthy, others are in whole or in part repetitions, some are irrelevant, and many of them are obscure. In such case it would be proper for the judge trying the cause to reconstruct and free instructions from redundancy, verbiage, and all foreign matter, and reduce them to a few clear and perspicuous legal propositions upon which the case turns, and give them as substitutes for those asked. The ends of justice would be thus better subserved, and there would be less complaints of the finding of verdicts.

The same objection is urged to the second, third, fourth, sixth, eighth and ninth of appellees' instructions as is urged to the first, and what has been said of the first is equally applicable to them. Correct practice would require the trial court to refuse all but one of instructions that repeat the same proposition. The proposition will not be controverted

that the mere expression of opinion by Peabody as to the meaning of the insurance clause in the mortgage could not operate to render him and Gallup liable. That could be done only by an agreement entered into between the parties, and understood and intended by them to become binding according to its terms. It was to guard against what was supposed to be the danger of the jury finding that such an opinion constituted a contract, that these instructions were asked and given. Appellant had testified that Peabody had, when the mortgage was executed, said the insurance clause bound Bourne, or Gallup & Peabody, as his agents, to keep the houses insured, and as that statement had been admitted in evidence, it was to obviate any wrong that might result from its admission that they were given.

The sixth of appellees' instructions is criticised. Another portion to which objection is urged, reads:

"An agreement made between the defendants and Brant, that the defendants would, as Brant's agents, keep said premises fully insured, is inconsistent with an agreement by which the defendants engaged, as the agents of Bourne, to see to it that the buildings described in the mortgage were kept fully insured. An agreement such as is alleged in the declaration and in each count thereof, is consistent with the clause in the mortgage relating to insurance, because by such agreement Brant was employing his agents to do what he had agreed by the mortgage to do; but any agreement made by Gallup & Peabody, as the agents of Bourne, that they would, as such agents, keep said property fully insured, and would relieve and absolve Brant from all responsibility therefor, would be inconsistent with the mortgage, because the clause referred to provided and provides that Brant, and not Bourne, should keep said property insured. But the court does not mean to intimate by what is here said, that because said agreement would be inconsistent with the mortgage, it could

not have been made. Whether, or not, it or the agreement alleged in the declaration was made, the jury must determine from all the facts and circumstances in evidence."

It is urged that such a contract as is set out in the declaration is not inconsistent with the insurance clause. This is manifestly true; but the instruction does not say the contract set up in the declaration is inconsistent with the insurance clause. It states the opposite fact. It does, however, say, that an agreement that Bourne, or appellees, as his agents, would perform the duty imposed on appellant, would be inconsistent with that clause. This is true, because appellant had covenanted that he would perform that duty, and such a verbal agreement or understanding could not change or abrogate his covenant. But this is irrelevant to the issues involved. The instruction did state that the parties could make the contract set out in the declaration.

It is urged that such a contract as that mentioned in the instruction would not have been inconsistent with the insurance clause, because both parties had insurable interests. Whether this is true or not, does not matter, because that question was not pertinent to the issues in the case.

The seventh instruction is criticised. It simply informs the jury that the evidence in the case must establish the contract declared on, and failing to do so, they should find for the defendants. Although not concisely stated, this the jury would no doubt understand to be its import. It announced a correct rule of law, and was properly given, and we think it could not have misled the jury.

It is claimed that the tenth instruction is vicious, and it was error to give it. It in substance informed the jury that if they believed, from the evidence, that appellant had been informed a sufficient time before the fire that the theatre was inadequately insured, then it was his duty to have effected additional insurance, if he deemed it necessary, and failing to do so, he could not recover. This involves the question

whether, in case of a breach of a contract for indemnity, the person indemnified, knowing of the breach of the agreement, may lie-by and permit the loss to occur without a demand of performance of the agreement, or to take other steps to secure himself from the loss, by performing the acts undertaken to be performed by the other party, or to procure other indemnity. The substance of this instruction is, that the party indemnified shall take such steps. It has been repeatedly held that a party being damaged can not stand by and suffer the injury to continue and increase, without reasonable effort to prevent further loss. Justice and the principles of fairness require that everyone shall use all reasonable efforts to preserve his property and protect his interests, even against the wrong or negligence of another. It is said it is not only the moral but the legal duty of a party who seeks to recover for another's wrong, to use due diligence in preventing loss thereby. This principle applies to a breach of contract, and a party is not entitled to compensation for injurious consequences from such breach, so far as he had the information, time and opportunity necessary to prevent them. (See Sedgwick on Damages, 6th ed., p. 106, both text and note, and authorities cited.) The same principle has been recognized by this court in cases of trespass. If the doctrine is correct, (and we perceive no reason, on principle or authority, to doubt it,) then it was the duty of appellant to have procured insurance. Gallup & Peabody, so far as is disclosed by the record, never, after the mortgage was executed, procured a dollar of insurance on the buildings. It is, however, claimed, that they directed the insurance agents to issue policies, and when called on by the agents, appellant paid the premiums. If this is true, appellant was fully informed of the extent they had ordered insurance for him, and as he made no objection to the amount, he must have been satisfied. Had he not been, he surely would have seen them, and ordered more, and as he did not, he accepted what they did as a performance of

32—111 ILL.

their part of the contract. Knowing the amount they had ordered, if not satisfactory, and the contract was broken by a failure to order more, it was the duty of appellant to procure such an amount as he regarded necessary, and failing to do so, under the authorities referred to he could not recover. This instruction, therefore, was not erroneous, and no error was committed in giving it.

It is urged that the thirteenth instruction is erroneous. It in substance informs the jury that if appellees neglected to insure the property, even if they had so agreed, for the years 1870 and 1871, and that appellant assumed the duty and responsibility, that would terminate the agreement, and would operate to release them from their contract, if one existed, to procure insurance after 1870; and in such a case there could be no recovery for any breach accruing after 1870, and that all prior breaches were barred by the Statute of Limitations. If there was such a contract, as claimed, and appellees neglected to perform it, and appellant assumed the duty during those years, he certainly absolved appellees from the contract, and waived its performance. All breaches prior to that time occurred more than five years before the suit was brought.

But it is said that this was a continuing agreement, and it did not terminate until the theatre was burned. If there was a contract, and there was a breach before 1870, an action could at once have been brought, and nominal damages could have been recovered, and no more, because there was not the slightest injury sustained by such a breach. The action was barred after five years, and if after that time appellant procured all the insurance he desired, that absolved appellees from further duty under the agreement, if one ever existed.

There were some other instructions relating to the impeachment of witnesses by contradictory statements, and in regard to the Statute of Limitations; but we do not perceive there was any material error in giving them.

The whole of appellees' instructions considered, if they are not precisely accurate, are so slightly incorrect that we are of opinion they did not mislead the jury. It would be impossible in so large a record, containing so much irrelevant matter, to avoid some slight errors or to give some instructions subject to hypercritical objections; but such objections, if allowed, only obstruct the administration of justice.

Complaint is made that the court erred in refusing to give the third of appellant's instructions. From what has been said it will be perceived this instruction should not have been given without qualification. It made no reference to the Statute of Limitations, or to the abandonment of the contract by tacit consent. There was no error in its refusal.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

SHELDON and MULKEY, JJ., dissenting.