### Alex Premo, Appellee, v. Julius Kessler & Company, Appellant.

#### Gen. No. 27,216.

1. WAREHOUSEMAN—*inability to procure insurance on whisky in bond as defense to action for failure to insure.* In an action for the value of whisky destroyed by fire while in storage, based upon defendant's failure to keep it insured according to contract, it was error to strike from the files an affidavit of merits which set up as

Premo v. Julius Kessler & Co., 225 Ill. App. 530.

a defense that the agreement to procure insurance was made at a time when insurance was customarily issued on intoxicating liquors stored in bonded warehouses but that supervening prohibition legislation had caused insurance companies generally to cancel insurance on such liquors, which had been done as to the liquor in question, and that although defendant had made great and exhaustive efforts to obtain insurance on the whisky, it was impossible to do so, and that plaintiff had been notified of such fact before it was destroyed by fire.

2. PLEADING—*sufficiency of affidavit of merits in action against warehouseman for failure to insure whisky in bond.* Statements, in an affidavit of merits in an action based upon defendant's failure to keep whisky insured according to contract, that insurance companies generally canceled their policies and that they refused further to underwrite such risks and, though defendant made great and exhaustive efforts to procure such insurance, it was impossible to do so, were not mere conclusions of the pleader but statements of fact which sufficiently apprised plaintiff of the nature of the defense without detailing instances of cancellation or refusal of insurance or of the particular efforts made to procure insurance.

3. PLEADING—*sufficiency of averment in affidavit of merits of warehouseman's inability to insure whisky in bond.* An objection to a statement in an affidavit of merits in a suit based upon defendant's failure to insure whisky while in bond that insurance companies "generally" refused to insure such goods as failing to show that defendant had tried all insurance companies, puts upon the pleading a too rigid and technical construction, in view of the character of the municipal court pleadings and the liberal construction given them.

4. EVIDENCE—*want of judicial notice of existence and practice of "Lloyd's."* That there exist companies like Lloyd's that will insure anything at any time is an assertion of something of which the court cannot take judicial notice.

5. WAREHOUSEMEN—*effect of notice to owner of inability to procure insurance on bonded whisky on right to recover for failure to insure.* In an action based upon failure of defendant to keep bonded whisky insured, where defendant's affidavit of merits, after setting up the defense that insurance companies refused further to insure such goods, stated further that plaintiff was informed of the impossibility of obtaining insurance, such statement constituted an additional legal defense on the principal that when the person indemnified knows of the agreement and has the information, time and opportunity to prevent the injurious consequences, he is not entitled to compensation therefor.

Appeal from the Municipal Court of Chicago; the Hon. HARRY

M. Fisher, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1921. Reversed and remanded. Opinion filed June 27, 1922. Rehearing denied July 10, 1922.

Mayer, Meyer, Austrian & Platt, for appellant; Levy Mayer, of counsel.

J. F. Novotny, for appellee; Jerome J. Sladkey, of counsel.

Mr. Justice Barnes delivered the opinion of the court.

The question presented on this appeal is as to the sufficiency of defendant's affidavit of merits, stricken on the motion of plaintiff, and by which defendant elected to stand, whereupon a judgment for $489.43 was entered against defendant, from which this appeal is taken.

The cause of action is founded upon a warehouse receipt for five barrels of whisky issued by defendant to plaintiff January 27, 1915. The whisky was destroyed by fire about December 22, 1920. The recovery had was for the purchase price of the whisky plus storage charges, taxes and insurance, upon the theory of defendant's liability for failure to insure the whisky, pursuant to the following indorsement on the reverse side of the receipt:

"The whisky described in this receipt will be insured for the owner against loss or damage by fire until withdrawn from bond, for the full purchase price paid or agreed to be paid by the original buyer, plus carrying charges (Government tax not included), the cost of such insurance to be paid by the holder hereof."

The defenses set up in defendant's affidavit of merits are as follows:

"1. That at the time (January 27, 1915) the warehouse receipt set forth in the plaintiff's statement of claim was issued, the whisky covered thereby was

stored in warehouse 'H' of Cedar Brook Distillery, a government bonded warehouse at Lawrenceburg, Kentucky; that at said time insurance companies generally throughout the United States were writing insurance and issuing policies on whisky stored in government bonded warehouses, and that the defendant's engagement and undertaking to procure insurance, in behalf of plaintiff and at his expense, on the whisky covered by said warehouse receipt, was entered into by both parties with the understanding and in the expectation that said practice would be continued by the insurance companies generally; that, during the latter part of the year 1919, and during the month of January, 1920, as a result of the anti-liquor agitation and legislation, and the enactment of the War-Time Prohibition Act and the Volstead Act, and the adoption of the Eighteenth Amendment to the Federal Constitution, the risk of underwriting such whisky became so great that the insurance companies generally canceled their outstanding policies covering such goods, and particularly those policies theretofore issued to this defendant, and refused to underwrite such risks for this defendant or any other person or company similarly situated; that, although this defendant made great and exhaustive efforts to obtain insurance upon the whisky stored in its aforesaid warehouse and covered by the receipt referred to in the plaintiff's statement of claim, it was impossible to procure such insurance.

"2.  That, upon ascertaining that, for the reasons set forth in paragraph 1 above, insurance could not be procured, the defendant, on, to wit, January 26, 1920, notified plaintiff that it was impossible to procure insurance in behalf of the plaintiff and at his expense or in any other manner, and that his whisky would therefore be without insurance after January 31, 1920; that plaintiff, notwithstanding such notification from the defendant, paid his insurance charges after February 1, 1920, for the period up to February 1, 1920, in the full knowledge that the insurance would not extend beyond the last-named date; and that plaintiff thereby assented to the condition imposed by the

defendant in its notice, and consented to be bound thereby."

The general principle upon which the defense in paragraph 1 of said affidavit is based is stated in the recent opinion of the Supreme Court of the United States in *Texas Co. v. Hogarth Shipping Corp. Ltd.*, 256 U. S. 619, 41 Sup. Ct. 612. It is there said:

"It long has been settled in the English courts and in those of this country, Federal and State, that where parties entered into a contract on the assumption that some particular thing essential to its performance will continue to exist and be available for the purpose and neither agrees to be responsible for its continued existence and availability, the contract must be regarded as subject to an implied condition that, if before the time for performance and without the default of either party the particular thing ceases to exist or to be available for the purpose, the contract shall be dissolved and the parties excused from performing it." (Citing numerous authorities.)

The court goes on to say that "the principle underlying the rule is widely recognized and applied to various classes of contracts. (Citation.) But, of course, it does not apply where the risk is fully covered by a term of the contract, nor where performance is not practically cut off but only rendered more difficult or costly." (Citation.)

In that case a voyage charter party, entered into between the parties, was made impossible by the supervening act of the British government in impressing the chartered vessel into the war service of the government before and beyond the time for the voyage. On the ground that this supervening event was not anticipated, and that there was no provision in the contract casting the risk on either party, it was held that the shipping company was absolved from liability for its failure to furnish the ship.

In the case at bar it is set up as a defense that the undertaking to procure insurance on the whisky was entered into by both parties with the understanding

and in the expectation that the practice of issuing policies on whisky stored in government bond warehouses would continue, but that the supervening and unanticipated events referred to in the affidavit caused the insurance companies generally to cancel outstanding policies covering such goods, and particularly those theretofore issued to defendant, and that they refused to underwrite such risks for defendant or other companies similarly situated, and that although defendant made great and exhaustive efforts to obtain insurance upon the whisky so stored and covered by said receipt it was impossible to procure such insurance, of which plaintiff was notified before the destruction of the whisky. We think the ultimate facts, so pleaded, would bring the case within the principle above stated.

Without questioning that the principle may be applied in certain cases appellee urges that the affidavit of merits does not state facts showing an impossibility but merely difficulty of performing, citing *Jacksonville, M. P. Ry. & Nav. Co. v. Hooper,* 160 U. S. 514, where it is said that: "Difficulty or improbability of accomplishing the undertaking will not avail the defendant. It must be shown that the thing cannot by any means be effected. Nothing short of this will excuse performance." In this connection appellee urges that the averment in the affidavit of merits that "insurance companies generally canceled their policies," and that they "refused to underwrite such risks for appellant and other companies similarly situated," and, though defendant made great and exhaustive efforts, it was impossible to procure such insurance, are mere conclusions of the pleader and not statements of fact. In this we do not concur. The statements that insurance companies generally canceled their policies and refused to underwrite such risks unquestionably state ultimate facts, and in such form as to show, we think, that the insurance contemplated could not be

effected. These averments sufficiently apprised plaintiff of the nature of the defense. The pleader was not required to detail the instances in which policies were canceled or the specific acts of refusal, or the particular efforts appellant made to procure insurance, or like evidentiary facts.

It is urged that by qualification of "insurance companies" by the word "generally" defendant does not show that it had tried all insurance companies, and appellee's counsel asserts that it is well known "that there exist companies like Lloyd's that will insure anything at any time." Not only is this an assertion of something of which we cannot take judicial notice but we think the construction appellee thus puts upon the pleading is too rigid and technical in view of the character of the municipal court pleadings and the liberal construction given them.

In this view of the case it is unnecessary to discuss the various cases cited in which the above principle was recognized or held inapplicable. That the principle now generally obtains, we think, cannot well be questioned. Cases presenting various phases of the doctrine are referred to in 13 Corpus Juris, p. 642, sec. 717, including *Walker v. Tucker,* 70 Ill. 527, and other Illinois cases. We refrain from discussing them for while the principle is involved in the ultimate facts pleaded we think an extended discussion of it more appropriate in a case presenting the evidence relied upon for its application.

While the second part of the affidavit is closely related to that set up in the first part, yet it states a further legal defense resting upon the principle recognized in *Brant v. Gallup,* 111 Ill. 487, as applicable to an agreement for insurance, that where the person indemnified knows of the breach of the agreement and had the information, time and opportunity to prevent the injurious consequences thereof, he is not entitled

to compensation therefor.    (See 2 Corpus Juris, p. 731.)

For the error in striking the affidavit of merits the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

GRIDLEY, P. J., and MORRILL, J., concur.