E. V. SAYERS, *Appellee*, v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant*.

No. 16,413.

SYLLABUS BY THE COURT.

1. PARTIES—*Action for Injury to Growing Crop by Landlord Who is to Receive Crop Rent.* A landlord who is to receive a share of the crop as rent may maintain an action without joining the tenant and recover from a railway company which obstructed a river, resulting in flooding the land and injuring and destroying part of the crops growing thereon, but can only recover to the extent of his share.

2. DAMAGES—*Destruction or Injury to Growing Crop.* The measure of damages for the destruction of a growing crop is the value of the crop in its condition at the time and place it was destroyed, and, if only injured, it is the difference in value before and after the injury.

Appeal from Franklin district court; CHARLES A. SMART, judge. Opinion filed March 12, 1910. Reversed.

*B. P. Waggener,* and *J. M. Challiss,* for the appellant.
*F. M. Harris,* for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: E. V. Sayers, who owned a farm and a half interest in a crop growing thereon, brought an action against the Missouri Pacific Railway Com-

pany to recover damages caused by the alleged negligence of the railway company in obstructing the Marais des Cygnes river and thus throwing the water back on the Sayers farm and destroying part of his crop. The case was tried with a jury, which returned a verdict in favor of Sayers for $250, and from the judgment rendered thereon the railway company appeals. It appears that in the early part of 1906 the railway company undertook to repair a bridge across the river near Ottawa, and in doing so placed two lines of piles across the river and fastened them together with timbers and braces. In June, 1906, when heavy rains fell, large quantities of drift and debris were carried down the river and lodged against the piles and bridge, thus forming an obstruction which resulted in overflowing Sayers's farm and injuring his crop. The farm adjoined the river, and had been leased to a tenant on condition that Sayers, the landlord, should receive as rental one-half of the wheat and corn grown on the place. The overflow, alleged to have been negligently caused by the railway company, injured the crop of the tenant as well as that of the landlord, but in this action Sayers only asked for the loss which he had sustained. There was testimony tending to show that the water was two or three feet higher above the obstruction made by the piling and bridge than it was below it, and that after the obstruction was washed out by the force of the current the water thrown back on Sayers's farm lowered rapidly. From the testimony it also appeared that on other occasions when the flood water reached the same general level in that region, and there was no piling to obstruct the flow, the water did not back upon and overflow the Sayers farm.

It is contended on this appeal that Sayers was not entitled to any damages; that his tenant was the owner of the crop, and that until the landlord's share was severed and set apart to him he had no such interest in the crop as would warrant him in bringing an action

for injury to any part of it.  Many authorities are cited
to show that, as between the landlord and the tenant,
the latter is entitled to the possession of the rented
land until the crop is grown and the landlord's share
delivered in accordance with the contract of lease, but
no question as to the right of possession as between
landlord and tenant arises here.  Both have an interest
in the crop, and are in a sense tenants in common of
the crop until a division is made, but each has an own-
ership which he has a right to protect.  (*Dodson v.
Covey*, 81 Kan. 320.)  The statute defines the kind of
interest a landlord has where the rental is a share of
the crop grown.  It provides that "when any such rent
is payable in a share or certain proportion of the crop
the lessor shall be deemed the owner of such share or
proportion, and may, if the tenant refuse to deliver him
such share or proportion, enter upon the land and take
possession of the same, or obtain possession thereof by
action of replevin." (Gen. Stat. 1868, ch. 55, § 25;
Gen. Stat. 1901, § 3869.)  This provision gives the
landlord an individual ownership in the crop, and for
an injury to that interest he can recover without join-
ing the tenant as plaintiff.  In *Larkin v. Taylor*, 5
Kan. 433, it was held that a tenant might recover
against a wrongdoer for the loss of a crop without
making the landlord plaintiff in the proceeding, but it
was further held that he could only recover for his own
interest.  The landlord is likewise limited in his re-
covery to the damage done to his share, and this he may
have without awaiting the coöperation of a tenant, who
is not a necessary party in bringing an action against
the wrongdoer, and whether he is a proper party it is
not necessary to determine.  (*Neal v. Ohio River R.
Co.*, 47 W. Va. 316; *Texas & Pacific R'y Co. v. F. W.
Saunders*, 4 Tex. App. Civ. Cas. 528; *Gulf, C. & S. F.
Ry. Co. v. Caldwell* [Tex. Civ. App. 1907], 102 S. W.
461; *Atlanta & B. Air Line Ry. v. Brown* [Ala. 1908],
48 So. 73.)

The only other question which appears to have been presented on the motion for a new trial is whether the court applied the proper measure of damages for the injury to, or loss of, the growing crop. The railway company asked for an instruction that if the issues were found for the plaintiff he could only recover one-half of the value of the crop destroyed at the time the damage occurred. Instead of this measure the court instructed that "the plaintiff alleges in his petition that he had rented this land to tenants, and that it was planted in wheat and corn, and he claims that he was to receive as rent for said land one-half of the wheat delivered in Ottawa, and one-half of the corn placed in the cribs on the farm, and that he was to pay one-half of the expenses of thrashing the wheat. If he recovers you should allow him just compensation for his loss. He should recover one-half of the total loss of the wheat, occasioned by the fault of the defendant, as alleged in the petition, and that value should be based upon the fair market value of the wheat in Ottawa at the time of its maturity, less one-half of the expense of thrashing. Likewise, he should recover one-half of the total loss of corn caused by the defendant's fault as alleged in the petition, which value should be ascertained from the fair market value of the corn on the farm at its maturity." This ruling can not be approved. The authorities generally agree that the measure of damages for the destruction of a growing crop is the value of the crop in its condition at the time and place it was destroyed, and where it is injured, but not destroyed, it is the difference in value before and after the injury. The question came before this court in the early case of *Hays v. Crist,* 4 Kan. 350. There a growing crop was injured by trespassing animals, and the plaintiff insisted that he was entitled to the worth of the crop at maturity, but the court held that "the only just rule by which the damages, if any had been done to the crops, could be estimated was to confine the testi-

mony to what it [the crop] was [worth] at the time the trespass was committed." (Page 352. See, also, *St. L. & S. F. Rly. Co. v. Ritz*, 33 Kan. 404.)

It is argued that an immature crop is incapable of valuation; that a crop which had been growing but a few weeks is no more than green blades or stalks, which, if then severed, would be of no practical use or value, and that therefore it would be unjust to measure the damages as of the time of the injury. We all know that growing crops are frequently bought and sold and their value at the time is estimated by the contracting parties. Valid chattel mortgages are given on growing crops, under which they may be sold, and they are also subject to sale upon attachment or execution, where they are appraised and their value estimated in their immature condition, and this seems to be done without any particular difficulty. Such a crop has an actual and also a potential existence, and a fair valuation can be made by witnesses of experience who are acquainted with the character of the land on which it is growing, the product derived from such land when properly cultivated, the ordinary course of agriculture and the climatic conditions in the region, the market price of ripened grain or product in the vicinity, when mature, and also how far the crop had progressed toward maturity when injured or destroyed. Consideration may be taken of these and perhaps other conditions in estimating the value of the crop, but these are not measures of value but only evidence to enable a jury to determine the value of the crop at the time and place of the injury and destruction. The owner is entitled to recover the actual loss which he sustained, and it was an immature crop, subject to many contingencies and open to attack by numerous enemies, and not a mature crop, which he lost. While the authorities are generally agreed that the damages must be measured as of the time of the injury and loss, there is some variety of expression as to the methods of reaching that

result. Some are to the effect that it is the actual value at the time of the loss, and others that it is the market value of the crop at that time. Some say it is the value of the crop when destroyed, considered in connection with the value of the right which the owner had to mature and gather it; others that a proper criterion is the value when matured, after deducting for future contingencies and the expenses for cultivation and care. Some arrive at the result by taking the difference in the value of the land before and after the injury or loss of the crop, while others have gone to the extent of holding that the rental value of the land for the season is the basis for computing the loss. These authorities are gathered in an elaborate note to *Teller v. Bay & River Dredging Co.*, 12 L. R. A., n. s., 267. (See, also, 6 A. & E. Ann. Cas. 946, 949; 12 A. & E. Ann. Cas. 782.)

As has already been indicated, a liberal rule as to proof of the value at the time and place of the loss should be applied. It was proper in this case to receive evidence of the character of Sayers's land, the kind of crops which it was capable of producing under ordinary conditions, the average yield of wheat and corn crops on that and similar lands in the neighborhood with like treatment and cultivation, the stage of growth the crop was in at the time of the flood, the market value of the wheat and corn in that vicinity about the time of the loss, and any other facts going to show the value of the undeveloped crop. Such proof is received to show the value of the crop as it stood at the time it was injured, and not its probable value when it should mature and be in the granary. There is a contention that the instruction could not in any event have been prejudical, as the wheat crop had almost reached maturity when it was flooded and injured. The overflow occurred about June 8, and as the wheat was then nearly ripe it is probable that there was but little difference in value between it and a mature crop, but it was still subject

to a number of contingencies which might affect its value. For instance, a hailstorm might seriously have injured the crop and greatly reduced its value; heavy rains might have made it impossible to cut and harvest the wheat in season, so that much of it might have been lost; continued wet weather while it was in the shock and before it could have been stacked or thrashed might have caused the wheat to sprout and thus made it of an inferior grade and quality. These are some of the contingencies which a buyer would consider in purchasing a crop in early June, and they show, too, that there is a substantial difference in value between a crop ready for harvest and one already harvested and garnered. However, they are hazards against which insurance may be had and which a man of experience might fairly estimate in measuring the value of the growing crop. The corn was necessarily young and small in the early part of June, when it was injured and destroyed. Much cultivation was necessary to mature it, and there was considerable risk that the crop might be greatly shortened by unfavorable conditions over which the owner had no control. In the instruction no consideration was given to these things, nor were the jury authorized to make any allowance for cultivation or deduction for immaturity. On the other hand, the jury were in effect told that Sayers was entitled to the value of the crop as it would be at maturity, when his actual loss was its value when injured and destroyed.

There appears to be nothing substantial in the other contentions of appellant, but for the error in the instructions the judgment must be reversed and the cause remanded for a new trial.

BENSON, J., not sitting.