[No. 4039.]

## ROBERTS V. LEHL.

1. LANDLORD AND TENANT—*Assignment of Lease—Effect.* The tenant's asignment of the lease under which he holds does not pass to the assignee his right of action for a previous breach of the landlord's covenants. (352.)

2. PLEADING—*Demand of Excessive Damages,* does not impair the plaintiff's right to recover according to the true measure. The complaint is not subject to demurrer. (353.)

3. DAMAGES—*Growing Crops Destroyed.* The measure of damages for the destruction, total or partial, of growing crops, is not what it would cost to raise them, to their condition at the time of loss, or to maturity; but, in the case of annuals, the value thereof immediately before the loss.

The jury should be directed to ascertain the condition of the crop at the time of the loss, what in the ordinary course of things, it would, at maturity, have produced in the market, by the exercise of ordinary care in maturing, harvesting, and marketing; they should be directed to take into account the average yield of like crops, on similar land, in the same season and locality, and to deduct from the market value thus ascertained the ordinary and reasonable expense of maturing, harvesting and marketing.

Where the action is by the tenant against the landlord, the rent reserved being in kind, the verdict should be diminished, proportionately to the share of the land. (355.)

4. —— *Growing Crops Injured but Not Destroyed.* The measure of damages for an injury to an annual crop, not totally destroyed, is the difference between its value immediately before the injury, and immediately thereafter. In ascertaining the future value of the injured crop, the attention of the jury should be directed to the same considerations as in the case of a total loss. (357.

5. —— *Landlord's Failure to Furnish Water.* Where, the lands being arid and irrigation necssary to their cultivation, the landlord fails to provide water therefor, according to his covenant, the tenant is not to plant a crop, depending on the uncertain coming of rain. He is not to assume this risk, and afterwards call upon the landlord to make good the aggravation of his damages, thus occasioned. The measure of his damages in such case is the difference between the rental value of the land, with water, and with it. (356.)

6. —— *Duty of Plaintiff to Minimize His Injury.* Action by tenant against landlord for the loss of a part of his crop, and injury to the residue, by the landlord's failure to provide water for the irrigation of the land, according to his covenant. There being evidence that by an expenditure of $15.00, as to one source of supply, and the payment of the water tax, as to another, the tenant might have averted the loss, it was said that if it should clearly

appear, upon a second trial, that it was reasonably within the tenant's power to avoid the loss, he should be allowed only the amount necessary to be thus expended. (358, 9).

*Error to Adams District Court.* HON. CHAS. MCCALL, Judge.

MR. T. WEBSTER HOYT, for plaintiff in error.

No appearance for defendant in error.

MORGAN, J.

Plaintiff was the lessee of a farm, and sued the lessor for $2056.65, damages to growing crops, alleged to have been caused by the lessor's failure to pay for the water for irrigation thereof, as provided in a written lease. Plaintiff obtained a verdict and judgment for $318.15, and defendant assigns error on the following grounds:

First, it is contended that the action was not in the name of the real party in interest, because it appeared on the back of the lease, when it was set forth in an amendment to the complaint, and when it was introduced in evidence, that it had been assigned. Such assignment was made, however, after the injury sued for occurred, and there was no evidence of an assignment of the claim for damages. The mere assignment of the lease, at such time, would not carry with it the claim herein, in the absence of any other evidence on the matter. It is stated in Jones on Landlord and Tenant, sec. 436: "The word 'lease,' when used in a contract of assignment to designate the interest transferred, has a definite legal signification—it means the estate in the land." The defendant did not plead or offer to prove that the claim for damages herein had been assigned. And the suit was brought almost immediately after the assignment, and no evidence was introduced as to damages accru-

ing after the date of the assignment.  Mr. Jones says, also, at sec. 448, at p. 513:

"Though it appears that the lessee has assigned his lease for the remainder of the term to another party, yet it is competent for him to institute an action for any damages accruing to him by reason of the breach of the covenants of the lease by the lessor, while he held the lease, and to recover such damages it is proper that the lease be exhibited in evidence."

In the case of *C. C. C. & St. L. Ry. Co. v. Wood,* 189 Ill., 352, 355, 59 N. E., 619, it was contended, that it appeared from the evidence, "that this lease, and all rights under it, have been transferred from the plaintiff, since which time he has had no interest in the lease, or any connection with the contract, and therefore cannot maintain an action upon it."

And the court said:

"Though it appeared the appellee had assigned the lease for the remainder of the term to another party, yet it was competent for him to institute an action for any damages accruing to him by reason of a breach of the covenants of the lease on the part of the appellant company while he held the lease, and to recover such damages it was proper the lease should be exhibited in evidence."

Second, it is next contended that it was error to overrule the demurrer to the complaint.  The complaint demanded a greater amount of damages than any true measure thereof would warrant, from the facts alleged, but this did not prevent it from stating a cause of action for a less amount upon a true measure.

Third, it is then contended that erroneous instructions were given concerning the measure of damages, and it is concluded that for such error the judgment must be reversed; and, in view of the possibility of another trial, the reversible error will be pointed out, although the case of the *Colo. Con. L. & W. Co. v. Hartman,* 5 Colo. App., 150,

38 Pac., 62, ought to have been, and should be, a sufficient guide.

There are instances where such erroneous instructions would not constitute reversible error, as in *Denver P. W. Co. v. Munger,* 20 Colo. App., 56, 77 Pac., 5, and in *Seyfried v. Knoblauch,* 44 Colo., 86, 96 Pac., 993, wherein the damages proved were, at least, equal to or greater than the verdict; but in the present case the facts proved were not sufficient upon which to base any true rule for the measure of damages, or upon which any damages could be rightfully based, when measured by any true rule. And, if error had been assigned upon the refusal of the court to give defendant's proffered instruction for a directed verdict, the judgment would have been reversed for that reason alone. It is concluded, however, that the assignment as to the erroneous instructions given accomplishes the same result.

One measure of damages submitted by the lower court, and applied to the crops totally destroyed, as well as to those only injured, was "the cost of preparing the ground, seeding, planting, cultivating and caring for the crops up to the time of the injury," plus "reasonable profits;" another measure submitted was "the cost of preparing the ground, sowing, cultivating and caring for the same; the cost of harvesting, marketing, and the value of the crop at its maturity," followed by an instruction to allow "reasonable profits," "in addition to the actual damage." These instructions, more or less, fit the evidence, but as both the evidence and the instructions were based upon a misconception of the measure of damages, the jury were misled, and, by reason of such error of the court, found the verdict. If a true measure of damages had been submitted the jury would have found themselves without sufficient evidence to find any damages, for the reason that there was no evidence, except to prove the cost of preparing the ground, seeding, sowing, planting, cultivating and caring for the crop, up to the time of the injury, especially as to the crops only

injured or partially destroyed. As to those totally destroyed, no recovery should have been permitted at all, under the evidence, for reasons hereinafter given.

The true measure of damages, as to growing crops, totally or partially destroyed, is not what it cost to raise them up to the time of the loss, nor what it would have cost to raise them up to maturity; and, if "reasonable profits" be added to such cost, it would be exceedingly fortunate to lose them. As stated in the *Hartman* case, the proper rule as to the measure of damages as to the total destruction of annual crops (as distinguished from perennial) is the value thereof at the time and place of the loss; that is, immediately before the loss, considering their condition at that time. And the method or data that is submitted to assist the jury in arriving at such value should be as carefully stated as the rule itself. One method, mentioned in the *Hartman* case, may be stated as follows: If the crop has no market value at the time and place of the loss, and there is a reasonable certainty that it would have matured if the breach of the lease had not occurred, the jury should be told to ascertain what such crop, considering its condition immediately before the destruction, would ordinarily have brought on the market, with ordinary care in maturing, harvesting and marketing, considering the average yield of such crops, in the same season and locality, on similar land, under similar circumstances; and then to deduct from such market value what the ordinary and prudent expense would be to mature, harvest and market such a crop; and that such difference would be the value of the crop destroyed, or the damage sustained. Where the action is by the lessee against the lessor, and the rent reserved is, as in this instance, a part of the crop, the verdict should be diminished to the extent of such a part of the value or damage found as the lessor was to receive as his part of the crop. The *Colo. Con. L. & W. Co. v. Hartman, supra; Teller v. The Bay & R. D. Co.,* 151 Cal., 209, 50 Pac., 942,

12 L. R. A. (N. S.), 267, 12 Ann. Cas., 779; *Smith v. Hicks,*
14 N. M., 560, 98 Pac., 138, 19 L. R. A. (N. S.), 938; *Sayers
v. Mo. Pac. Co.,* 82 Kans., 123, 107 Pac., 641, 27 L. R. A.
(N. S.), 168.  See especially the notes to these L. R. A.
cases.

This rule would have fit the plaintiff's evidence as to
his oats and wheat, which were totally destroyed, and which
were to be irrigated from what is called the "upper ditch,"
as he proved the usual expense up to and after the loss,
and the market value after maturity, but the rule given by
the lower court was not appropriate, and the evidence dis-
closes that a rule different from the one given by the lower
court, and from the one above outlined, should have been
submitted, as to these crops, for this reason: The upper
ditch‘ was a winter ditch, not furnishing water after the
first part of March, its only use being to furnish water to
soak or saturate the land under it prior to that time, and
the plaintiff testified, and based his claim upon the allega-
tion, that he could not obtain the water from this ditch;
but that he, nevertheless, prepared the ground and planted
his oats and wheat on the land under this ditch, and stated
that he depended on the rain; but that the rain did not
come, and his oats and wheat died when about three inches
high.  Now, it would not be just for him to recover damages
under the rule as to the destruction of growing crops, be-
cause he ought not to have incurred the risk of so planting
these crops, and then call upon the defendant for his sub-
sequent loss thereof, under the rule aforesaid.  It was his
duty to lessen, rather than increase, the damage resulting
from the lessor's breach of the lease. *Houston, etc., Co. v.
Campbell,* 91 Tex., 551, 45 S. W., 2, 43 L. R. A., 225; *Fisher
v. Goebel,* 40 Mo., 475.  The true measure of his damage
would be the same as if he had been prevented from plant-
ing, and had not planted, these crops.  The measure of dam-
ages, in such instances, is plaintiff's actual loss, at the time
of the breach, sustained by reason of not being permitted

to use such land as contemplated by the lease; such loss to be ascertained by finding the difference between the rental value of the land with water, and the rental value without it, as outlined in the cases of *Crow v. San Joaquin Ir. Co.,* 130 Cal., 310, 62 Pac., 562, 1058. No such rule was submitted, and there was no evidence of the rental value without water, and only by inference, as to its rental value with water. Consequently, the damages as to the wheat and oats must be eliminated.

The damage to the alfalfa and beets will be considered now, to ascertain whether the erroneous instructions affected the verdict concerning them. They were injured only, not entirely destroyed.

The measure of damages to annual growing crops, not totally destroyed, but only injured, is the difference between the value immediately before the injury and the value immediately thereafter; that is, the lessened value of the crops. *Sabine & E. T. R. Co. v. Joachimi,* 58 Tex., 456; *Trinity & S. R. Co. v. Schofield,* 72 Tex., 496, 10 S. W., 575; *Gulf Co. v. Nicholson* (Tex. Civ. Ap.), 25 S. W., 54; *Little Rock, etc., Co. v. Wallis,* 82 Ark., 447, 102 S. W., 390. The method or data which should be submitted to the jury to assist them in arriving at such difference, or damage, should be the same, with reference to the value before the injury, as above stated, concerning crops totally destroyed. The value after the injury, that is, the value in their injured state, or condition, should be found by considering what they could be made to bring on the market, and deducting therefrom the ordinary and prudent expense in maturing and marketing them. The instructions given wholly failed to submit any true measure, or method of arriving at it, concerning the alfalfa and beets, which were only injured, and not destroyed, by lack of water, but the jury were told that they should find the cost of preparing the ground, seeding, planting, cultivating and caring for the same, up to the time of the injury; without instructing them to deduct anything

for the value after the injury, although the evidence showed that plaintiff sold his interest in the lease and assigned it soon after the injury, and that he cut the alfalfa once and sold it, and that the assignee matured and marketed the beets. It does not appear what he received from his assignee, nor what the latter received for the crops, thus turned over to him, after maturing them, nor what the reasonable expense was in so doing. So, it is clear that there was neither evidence to meet a proper rule, nor proper rule itself, given to the jury upon which a verdict could be founded, as to such damage. It may be assumed that the jury followed the incorrect rule given to them, and found the value of the crops of alfalfa and beets, as they stood, prior to the injury, and based their verdict upon that. If plaintiff was thus given the value of those crops before the injury, and then sold them to the assignee of the lease after the injury, he was exceedingly fortunate again, for he would thus receive full value for them, the same as if they had been totally destroyed, and then receive value for them in their injured condition. The probability is that the jury did the best they could, in the absence of evidence and proper instructions, and guessed at the matter. The instructions given, as to the measure of damages, served to misdirect, rather than to assist them, in arriving at plaintiff's alleged loss.

There was also a claim for loss of pasturage and beet tops that might have been obtained if the water had been furnished, but these damages would clearly accrue after plaintiff assigned the lease, and cannot be considered.

It appears from the evidence that by an expense of about $15 in putting in the upper ditch proper board checks, plaintiff could have avoided the damage occurring to the crops under that ditch; and that by paying the water tax, as to the lower ditch (which he finally did, but too late, as, he alleges, to prevent the damage), he could have avoided the loss occurring to the crops under this ditch; and if it

should clearly appear, on another trial, that it was reasonably within his power to pay for these things, and he failed to do it, his measure of damages would be only the amount necessary to be paid to avoid the damage. A person is not entitled to compensation for injurious consequences due to the breach of contract, so far as he had the information, time and opportunity necessary to prevent them. *Brandt v. Gallup*, 111 Ill., 487, 497, 53 Am. Rep., 638. It is the duty of a person injured by the fault of another to use all reasonable means to protect himself against injurious consequences. *Lloyd v. Jones,* 60 Vt., 288, 289, 13 Atl., 638.

The judgment is reversed and remanded for another trial in accordance with this opinion.