No. 22,839.

C. C. WYANDT, as Executor, etc., *Appellant,* v. ARTHUR MERRILL, as Guardian, etc., and CLARENCE HOLMES, *Appellees.*

SYLLABUS BY THE COURT.

1. LANDLORD AND TENANT — *Life Estate — Death of Landlord — Estate Not Entitled to Share of Immatured Crops.* Except as the rule may be modified by statute, where one having the title to a farm for his own life leases it for a share of a wheat crop delivered at market and dies after the crop is sown and before it has matured, his estate is not entitled to any part of the crop.

2. SAME—*When Ownership of Landlord's Share of Crop Rent Attaches—Common-law Rule.* The common-law rule referred to in the foregoing paragraph is not abrogated by the statute which declares the lessee whose rent is payable in a share of the matured crop to be the owner of such share, because such ownership does not attach until the maturity of the crop.

Appeal from Dickinson district court; ROSWELL L. KING, judge. Opinion filed November 6, 1920. Affirmed.

*C. S. Crawford,* and *E. S. Crawford,* both of Abilene, for the appellant.

*G. W. Hurd, Arthur Hurd,* and *Bruce C. Hurd,* all of Abilene, for the appellees.

The opinion of the court was delivered by

MASON, J.: On February 22, 1918, James Strachan, being the owner of a quarter section in the southwestern part of Dickinson county, executed to Hannah Merrill, a minor, a deed therefor, reserving to himself the possession, rents, profits and control during his lifetime. A crop of wheat was sown on a

portion of the farm in the fall of 1918 by Clarence Holmes, as a tenant of Strachan. By the terms of the tenancy Holmes was to deliver to Strachan at market one-third of the wheat grown on the place during 1918 and 1919. Nothing further is disclosed as to the character or conditions of the lease. Strachan died March 13, 1919. The wheat was presumably harvested by Holmes, whose right to retain two-thirds of it is not challenged. The executor of Strachan, claiming to have been entitled to one-third of the wheat, amounting to 415 bushels, brought this action against the guardian and Holmes for its value, charging them with its conversion. A demurrer was sustained to the petition, which stated substantially these facts, and the plaintiff appeals.

The reservation in the deed executed by Strachan was merely of a life estate. There was nothing in the phrase employed in this connection to indicate a purpose to reserve anything further. The rent being payable in wheat delivered at the market, there is a fair implication that the grain was all the landlord was to receive of this crop. (*Mull v. Boyle,* 102 Kan. 579, 171 Pac. 652.) The question involved is therefore this— Where one having the title to a farm for his own life leases it for a share of the harvested annual crop and dies after the crop is planted and before it has matured, does such share go to his estate?

Under the common law if the life tenant sows a crop and dies before its maturity it goes to his personal representative under the doctrine of emblements. (8 R. C. L. 365; 17 R. C. L. 634; 8 A. & E. Encycl. of L., 2d ed., 318; 16 Cyc. 621.) If he dies between seedtime and harvest after having procured a "cropper" to operate the farm for a share of the crop, he is regarded as having had possession of the land and as having owned the growing crop or an interest therein (24 Cyc. 1464; 17 C. J. 382-383; 8 R. C. L. 373-374), and the title passes to his estate, perhaps in conjunction with the cropper, the remainderman taking nothing. (*Vawter v. Frame,* 48 Ind. App. 481.) If, however, he leases the land for a cash rent payable at a date subsequent to the harvest and dies before the maturity of the crop, the lease comes at once to an end, the remainderman becoming entitled to possession of the land, the lessee, however, owning the crop and having the right of ingress and egress for

the purpose of caring for and harvesting it. (See the authorities concerning emblements, already cited.) In such a case the lessee is not required to pay rent to any one; not to the lessor because it had not fully accrued during the existence of the lease and the common law permits no apportionment; and not to the remainderman because he was a stranger to the lease, which could not inure to his benefit because it had ceased to exist the moment his title accrued. (II Blackstone, *124, 1 Cooley's Blackstone, 4th ed., 528; 1 Tiffany on Landlord and Tenant, § 176, p. 1072; 1 Washburn on Real Property, 6th ed., § 245.) The unfair advantage thus given to the lessee has been corrected in England by a statute (11 Geo. II, c. 19, § 15) allowing the executor or administrator of the life tenant to recover so much of the rent as was proportioned to the part of the rental period which had elapsed at the time of his death. A number of American states (Kansas not being among them) have enacted similar statutes. (1 Tiffany on Landlord and Tenant, § 176, p. 1077, note 383.)

It follows that the plaintiff in the present case—the executor of the life tenant—has no right of recovery under the common law unless by reason of the fact that the rent was to be paid in a share of a crop instead of in money or some other form of property. It had not accrued at the time of the landlord's death. "Rents have not accrued until they become due, and grain rent, to be paid at threshing time, does not become due until that time." (*Vawter v. Frame,* supra.)

If his executor is entitled to a share of the matured crop when the rent is payable in that commodity and not otherwise, it must be upon the theory that in that situation the life tenant is the owner or part owner of the growing crop. This is a matter concerning which there is some difference of judicial opinion. When land is leased for a part of the crop the more usual view is that the landlord has no title to any part of the crop until its division (24 Cyc. 1469-1470; 8 A. & E. Encycl. of L., 2d ed., 317) ; from which it would result that on the death of a landlord having only a life estate, between sowing and reaping, his executor or administrator would take nothing. (See *Jennings v. Hembree* [Ind. App.], 124 N. E. 876; *Osborne v. Osborne* [Tex. Civ. App.], 138 S. W. 1062; *Borie v. Crissman,* 82 Pa. St. 125.) In a dictum in *Wilhoit v. Salmon,*

146 Cal. 444, it is assumed that under such circumstances the landlord's share of the crop would go to the personal representative of the life tenant, but the suggestion that the payment of the rent had not become due at the time of his death does not appear to have been considered. It is said that tenancy in common in the crop results from an agreement to cultivate land on shares (24 Cyc. 1471; 8 A. & E. Encycl. of L., 2d ed., 325) or any "contract whereby the use of land is given to a person to cultivate and return to the owner a specified portion of the crop produced" (8 R. C. L. 374). The words just quoted have obviously something of a common origin with a part of this language:

"Every form of agreement by which land is let to one who is to cultivate the same and give the owner as compensation therefor a share of the produce, creates a tenancy in common in the crops. An agreement to cultivate land on the shares is not a lease." (Freeman on Cotenancy and Partition, 2d ed., § 100.)

In a later note by the author of this text the proposition is stated in this form, which is warranted by a number of well considered cases:

"Every form of contract by which the use of land is given to one who is to cultivate it and give the owner as compensation therefor a share of the produce, creates a tenancy in common in the crop, and this is so whether the agreement between the parties is a lease or a mere cropping contract." (Note, 98 Am. St. Rep. 959.)

There is some confusion in the decisions growing out of the difficulty in classifying particular contracts as leases or as cropper's agreements, and some actual conflict. (See note, 37 Am. Dec. 317; 2 Tiffany on Landlord and Tenant, § 253, b.) We accept the view, however, that where the relation of landlord and tenant exists the landlord at the common law has no title to the growing crops (in the absence of a special provision of the contract to that effect), although the rent is to be paid in a share of a matured crop; that there is a real distinction in this regard between a lease of the land, the rent being payable in a share of a specified crop, and a contract for its cultivation on shares. The fact that the income to be derived by the owner from his land is made to depend upon the prosperity of the season gives the transaction something the color of a joint enterprise, but is not sufficient to change its essential character. In a particular case the question whether the

relation of the parties is that of landlord and tenant, employer and employee, or participants in a common venture, must turn upon their actual intention as gathered from the entire contract, the use of such words as "lease" or "rent" not being necessarily controlling. Here there is nothing in the pleading to show that they were anything but those of lessor and lessee. It results from this view that except as the common law may be modified by statute the share of a crop that would go to a life tenant as rent if he lived, in the event of his death before its maturity does not go to his estate.

2. The plaintiff contends, however, that under the situation presented the landlord owned a third interest in the growing crop in virtue of the statute reading:

"When any such rent is payable in a share or certain proportion of the crop, the lessor shall be deemed the owner of such share or proportion, and may, if the tenant refuse to deliver him such share or proportion, enter upon the land and take possession of the same, or obtain possession thereof by action of replevin." (Gen. Stat. 1915, § 5980.)

To determine the meaning of the term "such rent" it is necessary to examine the preceding section, which reads:

"Any rent due for farming land shall be a lien on the crop growing or made on the premises. Such lien may be enforced by action and attachment therein, as hereinafter provided." (Gen. Stat. 1915, § 5979.)

It will be noted that in the provision last quoted the only qualifying word applied to the rent of farming land is "due." It is true that that word is often used in the sense of "owing," and applied to an indebtedness irrespective of its maturity. But some qualification is needed to arrive at a reasonable interpretation. It cannot be supposed that the legislature intended that the landlord should have a lien upon the crop of each season for the entire rent that would eventually accrue upon a lease covering (for instance) a period of five years. A natural plan would seem to be to have the crop of each year stand as security for the rent of that year, but no such purpose is expressed. We conclude that the word "due" was used with the intention of limiting the amount of rent for which a lien is given to such as had matured—that for which the tenant was in arrears. It is true that in one instance this court has upheld a lien claimed for rent which had not matured, but the point now under discussion was not there raised or considered. (*Neifert v. Ames*, 26 Kan. 515.)

The rent referred to in section 5979 being that which had become due, the phrase "any such rent" as used in section 5980 is naturally to be interpreted as meaning matured rent. This construction is the more readily to be adopted because of the context. The section provides not only that the lessor shall be deemed the owner of a share of the crop to which reference is had, but that he may, if the tenant refuse to deliver it, take possession of it or maintain replevin. Obviously within the meaning of the statute the tenant could not refuse delivery of a part of the crop, nor could the lessor take possession of it, until it had been harvested, or at all events, until it had matured. It is held that where a growing crop is destroyed by the tortious act of a third person the landlord has such an interest that he may maintain an action for damages. (*Sayers v. Railway Co.*, 82 Kan. 123, 107 Pac. 641.) But in that situation, the ripening of the crop having been prevented, the maturity of the lessor's claim for rent may be regarded as having been thereby accelerated. We conclude that where rent is payable in a share of the crop the statute does not give the lessor any title thereto prior to its maturity, and therefore that the rule of the common law as to the disposition of the landlord's share in the circumstances stated still controls.

The provision of the statute that "rents from lands granted for life or lives may be recovered as other rents" (Gen. Stat. 1915, § 5972) has no bearing on the question here involved, its obvious purpose being to do away with the ancient rule that no action of debt lay for a freehold rent, reserved on a lease for life, during the continuance of the freehold out of which it issued. (III Blackstone, * 231, 232, 2 Cooley's Blackstone, 4th ed., 1023.)

The judgment is affirmed.

DAWSON, J. (dissenting) : The question involved in this case is not touched by our statutes, except in the general provision that the common law, so far as applicable to the conditions and wants of our people, shall remain in force in aid of the general statutes. (Gen. Stat. 1915, § 11829.) It is a rule of the common law that if a tenant for life sows the land and dies before harvest the crop shall inure to the benefit of his estate. It is not suggested that this particular rule of the com-

mon law is unsuitable to Kansas conditions. In II Blackstone * 122, 1 Cooley's Blackstone, 4th ed., 527, it is said:

"Tenant for life, or his representatives, shall not be prejudiced by any sudden determination of his estate, because such a determination is contingent and uncertain. Therefore if a tenant for his own life sows the lands and dies before harvest, his executors shall have the *emblements* or profits of the crop: for the estate was determined by the *act of God*, and it is a maxim in the law that *actus Die nemini facit injuriam* (the act of God injures no man). The representatives, therefore, of the tenant for life shall have the emblements to compensate for the labor and expense of tilling, manuring and sowing the lands; and also for the encouragement of husbandry, which being a public benefit, tending to the increase and plenty of provisions, ought to have the utmost security and privilege that the law can give it."

I deem it immaterial whether the life tenant sows the crop with his own hands, or by hired servants, or by a contract with another person for a share of the crop. The important matter is that the life tenant cause the crop to be sown, not the details by which he effects that object. The majority opinion sustains this view and cites ample authorities in its support. It seems to me that that point should settle this case. I therefore dissent.