No. 24,551.

THE BIRD CITY STATE BANK, *Appellant*, v. THE GOODLAND EQUITY EXCHANGE, *Appellee*.

SYLLABUS BY THE COURT.

LANDLORD AND TENANT—*Chattel Mortgage by Tenant on His Two-thirds of Growing Wheat Crop—Right of Mortgagee to Recover from Purchaser of Wheat Crop—Landlord's Share—Expense of Threshing and Marketing.* A tenant gave a chattel mortgage, which was duly recorded, covering his two-thirds interest in growing wheat on land for which the lessor was to receive as rent one-third of the crop. The tenant harvested, threshed, and disposed of all the wheat, without communicating with the mortgagee, as he had promised to do. Fourteen hundred and thirty bushels were threshed. A purchaser bought 883 bushels at the market price, and shipped them out of the state. The purchaser paid out the full purchase price to the landlord for one-third of the wheat threshed, to the thresher for threshing the wheat, to a man who hauled the wheat from the machine to the elevator, and to another person. *Held,* after deducting from the quantity of wheat purchased the landlord's share of the entire crop, the purchaser is liable to the mortgagee for the remainder, at the market price.

Appeal from Sherman district court: CHARLES I. SPARKS, judge. Opinion filed June 9, 1923. Reversed.

*E. E. Kite,* of St. Francis, *E. F. Murphy,* and *E. E. Euwer,* both of Goodland, for the appellant.

*John Hartzler,* of Goodland, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by a chattel mortgagee, to recover the value of wheat from a purchaser. A demurrer was sustained to the plaintiff's evidence, and it appeals.

The mortgage, which was duly recorded, was given in January, 1921, by Whitmore, and covered his two-thirds interest in 140 acres of growing wheat on land he leased from S. S. Dowell, who reserved as rent one-third of the crop. At harvest time the plaintiff's cashier inquired of Whitmore about cutting the wheat, the probable yield, and about threshing. Whitmore said he was making preparation to harvest, there would be enough wheat to pay the mortgage, as soon as he could get a machine he would thresh, and he would let the cashier know when he threshed. Whitmore harvested, threshed, and disposed of the wheat, without communicating with the bank, and as soon as the threshing was finished he left for parts unknown.

The answer admitted Whitmore raised 1,430 bushels of wheat. Fritz Dowell testified he was present when the wheat was threshed, and took 370 bushels for furnishing the seed for the crop. Neu, who threshed the wheat, testified he took part of the wheat for threshing. Douglas, the defendant's manager, testified he purchased for the defendant 883 bushels. The proceeds of one truck load, which Dave Johnson got at the time the wheat was threshed, amounting to $44.03, was all the plaintiff received from the crop to apply on its mortgage.

Douglas testified he paid 88 cents per bushel, or the total sum of $777.04, for the wheat he purchased. The price paid was the market value, and the wheat was shipped to Kansas City, Mo., immediately after it was purchased. He applied the proceeds as follows:

| | |
|---|---:|
| Paid to S. S. Dowell, the landlord | $439.12 |
| Paid to Neu, the thresher | 182.92 |
| Paid to Jones | 100.00 |
| Paid to Rose | 55.00 |
| Total | $777.04 |

The district court sustained the demurrer to the plaintiff's evidence on the theory the plaintiff was entitled to recover nothing but the value of wheat unharvested, unthreshed, and undelivered to market, and no such value was proved. The district court erred.

Change in form of the property did not affect the lien of the recorded mortgage. It covered the wheat while growing, while standing ripened on the stalk, while cut and in the shock or stack, and while threshed and in the granary or elevator. The expense of harvesting, threshing and marketing the wheat was a matter of no concern to the purchaser. That was the affair of the tenant, and if the proceeds of the sale of the wheat had remained in the defendant's possession, the lien of the mortgage would have attached to them. (*Muse, Spivey & Co. v. Lehman*, 30 Kan. 514.)

In the case cited, the sale was made with the consent of the mortgagee. Nevertheless, the purchasers held the price for the mortgagee, and this not merely because the purchasers knew the facts, but because they were required to take notice of the recorded mortgage.

There is no dispute about the facts, and the substantial defense was, the defendant has satisfied claims to the wheat superior to the lien of the chattel mortgage. This is true only in part.

The plaintiff's mortgage covered but two-thirds of the wheat, the tenant's share. The remaining one-third belonged to S. S. Dowell, as rent, by virtue of the statute, which reads as follows:

"Any rent due for farming land shall be a lien on the crop growing or made on the premises. Such lien may be enforced by action and attachment therein, as hereinafter provided.

"When any such rent is payable in a share or certain proportion of the crop, the lessor shall be deemed the owner of such share or proportion, and may, if the tenant refuse to deliver him such share or proportion, enter upon the land and take possession of the same, or obtain possession thereof by action of replevin." (Gen. Stat. 1915, §§ 5979, 5980.)

In the case of *Wyandt v. Merrill,* 107 Kan. 661, 193 Pac. 366, 1087, a life tenant leased land for wheat, reserving as rent one-third of the crop delivered at market. He died before the crop matured, and the question was whether one-third of the wheat, when harvested by the tenant, passed to the lessor's executor, or belonged to the remainderman. It was held the executor had no title, there being no statute modifying the common law on the subject. The statute quoted above was invoked as abrogating the common-law rule. The statute was interpreted, and the conclusion was stated as follows:

"We conclude that where rent is payable in a share of the crop the statute does not give the lessor any title thereto prior to its maturity, and therefore that the rule of the common law as to the disposition of the landlord's share in the circumstances stated still controls." (p. 666.)

If taken literally, and without reference to the question under consideration, this language would appear to make a landlord's statutory ownership inferior to a mortgage given by his tenant before maturity of the crop. The decision has no such effect.

The statute was not enacted for the purpose of determining succession to property as between the executor of a life tenant and the remainderman. Its sole purpose was adjustment of relations between landlord and tenant. The object was to provide security to the landlord for his rent when due, which could not be before maturity of the crop. To effect such security, the landlord is to be deemed owner of his share, when due, and is provided with the remedies of an owner. The remedies, however, also relate to maturity of the crop, and hence the court was constrained to hold that title of a kind which would pass to the lessor's executor had not vested in the lessor at the time of his death. The landlord's interest, however, is inchoate with the sowing of the seed in his ground; it attaches to the growing grain to such an extent that he may sue for damage done by a wrongdoer (*Sayers v. Railway Co.,* 82 Kan. 123, 107 Pac. 641) ; it may be sold before maturity or division of the crop

(*Howell v. Push*, 27 Kan. 702); and it ripens into full ownership with maturity of the crop. This interest the tenant is powerless to encumber or defeat, and he could not maintain an action to recover for its destruction (*Sayers v. Railway Co.*, supra). The statute would be a mockery to landlords if, at any time after planting and before maturity, even the day before maturity, the tenant could deprive the landlord of his share of the crop; and as between landlord and tenant and persons claiming under the tenant, the landlord's statutory ownership relates to incipience of the crop.

The result of the foregoing is, S. S. Dowell was entitled to one-third of the wheat threshed by his tenant, wherever he could find it, or to its value.

Neu, who threshed the wheat, had no lien on the grain, and could obtain from the tenant no lien which would be superior to the plaintiff's mortgage. The statute relating to liens for threshing grain gives a lien superior to none except those which attach after the date of the threshing. (Laws 1917, ch. 231.) This statute is the beginning and the end of threshers' liens in this state. A thresher, like anyone else doing business with a tenant, must take notice of the landlord's ownership or lien, and of recorded chattel mortgages. If doubtful about the tenant's financial ability to pay, he should confer with the landlord and with lien holders, or decline to do the threshing. In the absence of contract with the thresher, neither the landlord nor a chattel mortgagee is under obligation to pay for threshing; and under his admission, Neu is liable to the plaintiff for conversion of the wheat he took in payment of the threshing bill.

Jones hauled some of the wheat from the machine to the elevator. He performed this service on the credit of Whitmore, or somebody besides the plaintiff, and the defendant cannot charge the expense to the plaintiff. There is no explanation of the check to Rose.

Conversion occurred when the defendant bought the wheat and assumed dominion over it. Demand for the proceeds was made on August 10, 1921. After deducting from 883 bushels the landlord's share of the entire crop, the plaintiff should recover for the remainder, at 88 cents per bushel, with interest from date of the demand.

The judgment of the district court is reversed, and the cause is remanded with directions to enter judgment for the plaintiff as indicated.