## No. 30,997.

THE FARMERS STATE BANK, *Appellant*, v. MIKE PETERS et al., *Appellees*; ALFONZO PETERS, *Appellant*.

(22 P. 2d 457.)

Opinion filed June 10, 1933.

*Frank A. Lutz* and *A. E. Jordan*, both of Beloit, for the appellants.
*Ralph H. Noah*, of Beloit, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one by a bank as chattel mortgagee to recover for conversion of wheat by Mike Peters. Judgment was rendered for plaintiff. Then judgment was rendered against the bank and in favor of Mike Peters for the cost of harvesting and threshing the wheat with a combine. The judgment included other parties whose relation to the controversy will be indicated. Both sides appeal.

Alfonzo Peters rented the Gering farm, paid the rent, and raised wheat which was harvested in 1930. Mike Peters harvested the wheat with a combine under an arrangement which Alfonzo said included exchange of work. The harvested wheat was stored in the barn on the farm, some in the driveway and some in the haymow. Mike made no pretense of perfecting a thresherman's lien, but in January, 1931, he hauled away enough wheat to pay for the har-

vesting and sold it to Ponton and Stehley, doing business as the Ponton Grain Company. Later he took some more wheat. The bank, holding a recorded chattel mortgage on the wheat to secure indebtedness of Alfonzo Peters, sued Mike Peters and Ponton and Stehley for conversion. Alfonzo was made a defendant merely to establish the bank's lien. Alfonzo filed no answer, made no appearance in his own behalf, and attended the trial merely as a witness under subpœna.

Mike Peters and Ponton and Stehley filed a joint answer. The answer contained a general denial. Ponton and Stehley pleaded they bought the wheat in good faith and for a valuable consideration from Mike Peters, who represented the wheat belonged to him. This part of the pleading stated no defense to the bank's action. Likewise having no defense to the action, Mike Peters pleaded with abandon. He said Alfonzo owed him approximately $2,000, but he did not relate the indebtedness in any way to the wheat business or any other business, or pray judgment against Alfonzo for anything. Mike Peters then told about harvesting the wheat under an arrangement by which he was to be paid the "going" charge for the work, and he named what he said was a reasonable charge per acre. He said he cut 150 acres and hauled part of the grain not to the barn, but to a bin on the farm rented by Alfonzo. The remainder he sold. As the wheat was cut and threshed and "desiring to preserve his lien," he took possession of 550 to 575 bushels and placed the wheat with "the rest of the wheat which he owned and was stored in said bin." At the time he took the wheat it was worth sixty-one cents per bushel net—the market price, sixty-five cents, less the hauling charge, four cents. He said that at that figure he, "the defendant Mike Peters received $350.75 upon his thresherman's lien." The answer was discreetly silent with respect to how Mike got a lien. The answer then told about hauling wheat to the Gering place and putting it in the loft of the barn and about the hauling away of wheat, and this part of the answer concluded as follows:

"The defendant, Mike Peters, . . . hereby admits he is indebted to his son, Alfonzo Peters, or his mortgagee, for approximately sixty-four bushels of wheat which sold for fifty-five cents less four cents hauling charge or fifty-one cents delivered or $32.64.

"The defendant, Mike Peters, specifically denies that he is indebted to his son, Alfonzo Peters, or his mortgagee in any sum greater than above tendered."

The answer then said the mortgage securing the indebtedness

claimed by the bank against Alfonzo Peters covered personal property greatly in excess of the indebtedness, and said Mike Peters believed the action was in pursuance of a conspiracy between the bank and Alfonzo to defraud Mike out of the amount "paid to him" for threshing the wheat. The prayer of the answer follows:

"Wherefore, the answering defendants pray that they go without day and for their costs, except for the $32.64, which is admitted to be due, and for their costs."

A jury was called, wheat prices were agreed to, and the trial commenced with the following announcement by the court:

"I suppose the only thing for the jury to determine is the amount of wheat in controversy, and the other is just a question of whether there is a lien or not, and the priority of it, what liens there are and which liens are prior."

The jury believed the testimony of Alfonzo Peters and returned the following findings of fact:

"How much wheat, raised on the Gering place in 1930, was stored on said place at harvest time: (a) In the hay mow? Four hundred thirty-seven bushels. (b) In the driveway? Six hundred seventy-five bushels."

At the conclusion of the trial the court rendered the following judgment:

"And the court, after listening to the arguments of the respective attorneys, rendered and entered a judgment herein for plaintiff against the defendants, Harry Ponton and C. W. Stehley, for the sum of $351 with interest at 6 per cent from Feb. 1, 1931, and for costs. To which judgment the said defendants, Harry Ponton and C. W. Stehley, duly objected, and the court further rendered and entered a judgment for plaintiff against Mike Peters for the sum of $27.82 with interest at 6 per cent and costs . . ."

On the same day the court on its own motion set aside the judgment for plaintiff against Mike Peters and rendered judgment for Mike Peters against plaintiff for $360 with interest at 6 per cent and costs. The next day the court set aside the judgment last referred to and finally rendered the following judgment:

"1. A judgment for plaintiff against Mike Peters, Harry Ponton and C. W. Stehley for the sum of $351 with interest at 6 per cent from February 1, 1931, and costs.

"2. A judgment for plaintiff against Mike Peters for $36.93 with interest at 6 per cent and costs.

"3. And a judgment for Mike Peters against Alfonzo Peters and against the plaintiff for the sum of $360 for combining and delivering the mortgaged wheat to market mentioned in this action."

The first part of the judgment was necessarily based on an implied

general finding for plaintiff, which in turn was necessitated by the evidence. The second part of the judgment was based on the admission made in Mike Peters' answer.

The third paragraph of the judgment, so far as it gave judgment in favor of Mike Peters against the bank, was contrary to the established law of this state. Mike Peters had no contract with the bank to cut and thresh the wheat with his combine. He testified he did not know the bank had a mortgage on the wheat, and in the absence of contract the bank was under no obligation to pay him for cutting or threshing or marketing the wheat. (*Bank v. Equity Exchange,* 113 Kan. 696, 216 Pac. 278.)

The portion of the third paragraph of the judgment which gave Mike Peters judgment against Alfonzo Peters for combining and delivering the wheat was unwarranted.

As indicated, Mike Peters put in his answer a claim, irrelevant to the subject matter of the litigation, that Alfonzo owed Mike $2,000. The claim was abandoned in the prayer of the answer, and the judgment finally rendered had nothing to do with that indebtedness. Mike asserted in his answer he had been paid for combining the wheat, and there was nothing in the answer to apprise Alfonzo Alfonzo was being sued for the price of harvesting the wheat.

The court has read the transcript of 150 pages, and there was nothing in the proceedings at the trial to apprise Alfonzo he was sued for the price of harvesting the wheat. It will be recalled the wheat involved was harvested in the summer of 1930. The bank's first witness at the trial was Alfonzo Peters. When counsel for Mike Peters commenced the cross-examination, the following occurred:

"By Mr. Noah: Q. Who paid the rent on the Gering place for 1927?

"Mr. Jordan: We object as immaterial. (No ruling.)

"A. Dad did; he took everything.

"Q. Yes, and who in 1928? A. He paid part of it.

"Mr. Jordan: We object as immaterial." (No ruling.)

Beginning in this illegitimate way at the outset of the trial, the evidence was finally extended to show that Mike and Alfonzo each made claims and counterclaims against the other growing out of farming operations during a period of years. Counsel for Mike Peters finally offered some evidence bearing on the question, as counsel stated it, of "who was indebted to who and how much." The court said each had claims against the other and the only purpose

for which the evidence was admissible was to show interest and affect credibility of the witness, and the question of who was indebted to whom and how much never was tried. The evidence which got in was not such that the court could make an accounting to determine who was indebted to whom and how much, and the judgment in favor of Mike against Alfonzo for a single item of a harvest bill was as lacking in justification as the judgment against the bank for the same harvest bill.

The judgments in the first and second paragraphs of the court's final judgment are affirmed. The judgment in the third paragraph is reversed, and the cause is remanded to the district court with direction to strike out that paragraph.