No. 25,448.

T. C. SNODGRASS, *Appellant*, v. S. A. CARLSON et al., *Appellees*.

SYLLABUS BY THE COURT.

1. LANDLORD'S LIEN ON CROPS FOR RENT—*Attaches from Commencement of Growth of Grain.* The statutory lien of a landlord for rent attaches at the beginning of the tenancy, and in the case of crops from the commencement of their growth, whether or not the rent is then due.

2. LIEN OF MORTGAGE—*Inferior to Landlord's Lien.* The lien of a mortgage given by a tenant on crops is inferior to the statutory lien of the landlord for rents.

3. LANDLORD AND TENANT—*Tenant Holding Over After Termination of Lease—Not a New Tenancy—Landlord's Lien for Rent Not Defeated.* A tenant in possession of a farm under a written lease for one year sowed wheat, to which the landlord's lien for rent attached. The tenant, with the assent of his landlord, held over and harvested the wheat. *Held,* that the holding over did not constitute a new tenancy so as to cut off or defeat the landlord's lien.

Appeal from Saline district court; DALLAS GROVER, judge. Opinion filed November 8, 1924. Reversed.

*Z. C. Millikin,* of Salina, for the appellant.

*C. W. Burch, B. I. Litowich, LaRue Royce, J. O. Wilson, J. H. Wilson,* and *Alex H. Miller,* all of Salina, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This case involves the priority of liens upon crops grown upon rented premises between the landlord and a mortgagee of the lessee. Plaintiff is the owner of 800 acres of farm, meadow and pasture land in Saline county. Some time in 1916 he leased this land to S. A. Carlson for one year, beginning March 1, 1917, and by the terms of the lease Carlson was to pay plaintiff as rent one-third of the crops grown upon the leased premises, and in addition thereto the sum of $1,200. Carlson went into possession under the lease and paid the rental as agreed. Some time in 1917 a new lease on practically the same terms was executed by the parties for the year beginning March 1, 1918. At the expiration of this lease a new lease was not made, but Carlson held over and paid rental in accordance with the terms of his last lease. Some time in 1920 a lease for the real property was executed by the parties for the year beginning March 1, 1921, on terms substantially the same as the former lease. For the cash rental two notes were given of $600 each, due at different times, the last one being due November 1, 1921. That note was not paid when due and a new note was given for it. During the fall of 1921 plaintiff and Carlson talked of a new lease, but Carlson wanted to lease the farm land only, about 200 acres of which he had then plowed for wheat. The plaintiff did not agree to that, but told Carlson that if he remained on the place he would have to remain under the terms of his existing lease. No new lease was written for the year beginning March 1, 1922, but Carlson, with the assent of the plaintiff, continued to occupy the premises until about March 1, 1923. Carlson delivered to plaintiff one-third of the wheat harvested upon the premises in 1922, but did not pay the $1,200 cash rent for that year, nor the last $600 payment of the year before, and plaintiff sued to enforce a lien for such rent upon Carlson's share of the wheat harvested on the premises in 1922.

On October 17, 1921, Carlson executed to the Planters State Bank a chattel mortgage on "my two-thirds interest" in the wheat then growing on the leased premises to secure a note for $650. On February 20, 1922, Carlson and wife executed to the same bank a mortgage on "my ⅔ interest in all of the growing wheat" on the leased premises (and other personal property) to secure a note for $4,020.82. The notes secured by the mortgages represented valid ob-

ligations of Carlson to the bank and the mortgages were duly recorded.

The question presented for our decision is, Do these mortgages give the bank a lien upon two-thirds of the wheat grown by Carlson on the leased premises and harvested in 1922 (one-third of it having been delivered to plaintiff in accordance with the terms of the lease), prior to the lien of the plaintiff under the terms of the lease and the statute, for the cash rental due him under the lease? The answer must be in the negative.

In *Bank v. Equity Exchange,* 113 Kan. 696, 698, 699, 216 Pac. 278, it was said:

"The landlord's interest, however, is inchoate with the sowing of the seed in his ground; it attaches to the growing grain to such an extent that he may sue for damage done by a wrongdoer (*Sayers v. Railway Co.,* 82 Kan. 123, 107 Pac. 641); it may be sold before maturity or division of the crop (*Howell v. Push,* 27 Kan. 702); and it ripens into full ownership with maturity of the crop. This interest the tenant is powerless to encumber or defeat, and he could not maintain an action to recover for its destruction (*Sayers v. Railway Co.,* supra). The statute would be mockery to landlords if at any time after planting and before maturity, even the day before maturity, the tenant could deprive the landlord of his share of the crop; and as between landlord and tenant and persons claiming under the tenant, the landlord's statutory ownership relates to incipience of the crop." (p. 698.)

It is argued that since the note given by Carlson to plaintiff for a part of the cash rent for 1921 was not due until November 1 of that year, that the landlord's lien did not attach until the note was due, and hence that the mortgage given to the bank in October, 1921, became a lien prior to it. There can be no merit in this contention. It may just as well be argued that the lien of a chattel mortgage or of a real-estate mortgage does not attach to the property therein described until the note it is given to secure is due. A landlord would need no lien to secure the payment of cash rentals if the rentals were paid in advance; it is only when the rentals are to be paid at the termination of the lease, or at some time during the term of the lease, that the lien becomes of any value.

In 16 R. C. L. 988 the rule is thus stated:

"The statutory lien of a landlord for rent attaches at the beginning of the tenancy, . . . in the case of crops, from the commencement of their growth, whether or not the rent is then due. Such lien does not depend upon a levy, and exists independently of the institution of any proceedings for its enforcement. The remedy by levy, distress or attachment, when available, is simply to enforce a lien already existing."

To the same effect is 24 Cyc. 1250.

There is some language in the second paragraph of the syllabus and corresponding portion of the opinion of *Wyandt v. Merrill*, 107 Kan. 661, 193 Pac. 366, 1087, which might be construed as supporting an opposite view, though the specific question now before the court was not considered nor passed upon in that case. To the extent that *Wyandt v. Merrill* tends to support a view in opposition to that herein expressed, it is disapproved.

It is argued that when the plaintiff took notes for the cash rental to be paid him under the lease, he waived the lien provided for by the lease under the statute. The taking of such notes did not have that effect. While the lien would have existed without the notes, they were simply additional evidence of the amount and the time when it was to be paid, and did not destroy the lien for rent. (16 R. C. L. 1022.)

It is further argued that by taking a renewal note for the amount of the rent payable November 1, 1921, the plaintiff waived any lien he had under the lease under the statute, but such is not the effect. (*Gonder v. Dodge*, 97 Kan. 562, 155 Pac. 937.) It simply evidenced a modification of their former agreement with reference to the time of the payment.

It is argued that the holding over of the leased premises by Carlson for another year after the termination of the written lease March 1, 1922, constituted a new tenancy, and hence that the plaintiff could not in any event have a lien upon the wheat harvested in 1922 for any portion of the rent under the written lease ending March 1, 1922. There is authority under some circumstances for treating a holding over as a new tenancy (35 C. J. 1104), but this is not construed to defeat a landlord's lien upon the crops sown and to which his lien attached during the terms of the lease and which matured and were harvested during the year of the holding over, and generally where there is an agreement that the holding over shall be under the terms of the former lease it is considered as a continuing tenancy just as though the lease had been written for two years in the first instance. (*Towle v. Weise*, 64 Kan. 760, 68 Pac. 637.) Here Carlson wanted to keep a part of the place for another year on terms different from his written lease, but was told by plaintiff that if he continued in possession he would have to continue under the terms of the lease, and he did continue in possession with the assent of the plaintiff. It would not be difficult under this state of facts to hold that what was done amounted to an agreement to hold over under the terms of the lease, but it is not necessary to resort to that, for it is well settled

that where a tenant does hold over with the assent of the landlord and no new terms have been agreed upon, the holding over is under the terms of his existing lease. Here the wheat was sown during the term of the written lease. The lien of the landlord attached to it as soon as it was sown, and the tenant was powerless to abrogate or destroy that lien by holding over, hence it continued and could be enforced out of the crop when it matured.

At the time of the trial there was a controversy about a thresher-men's lien, but that has been paid out of the proceeds of the wheat and is no longer of any consequence. After the threshing of the wheat in 1922 Carlson went into bankruptcy and the wheat was sold and the money impounded to abide the final decision of this case. The money is not sufficient to pay plaintiff and the bank, hence neither Carlson nor his trustee in bankruptcy have any interest in the matter.

There is an intimation on behalf of the bank that the $1,200 cash was for the rent of the pasture and meadow land, and hence would not be a lien upon the crops grown upon the farm land. There were not separate leases, nor does the lease specifically provide that the $1,200 was for the pasture land. The entire 800 acres was leased under óne lease and the rent to be paid was one-third of the crops raised and $1,200 in cash. Hence the cash rent was a lien upon the crops grown upon the premises. (*Firstenberger v. McBee,* 113 Kan. 110, 213 Pac. 813.)

There are some findings to the effect that Carlson did not use the pasture on the premises during the summer of 1922 except for his own horses and cattle, but that a neighbor put stock in the pasture without charge; and further, that Carlson did not put up the alfalfa on the premises that year, nor put out and cultivate the corn, but that his son did those things. A tenant cannot evade the payment of rent by conduct of this character.

The court found the sum due plaintiff for rent, but held that he had no lien prior to that of the bank. The judgment is reversed in so far as it denies appellant's lien on the crops attached and the proceeds thereof and directs the payment of the claim of The Planters State Bank from the proceeds of the sale of wheat, and the court is directed to pay the plaintiff the sum found due him out of the money impounded and the balance, if any, to be paid to said bank.

BURCH, J., not sitting.