No. 25,464.

E. P. Pitts (Beulah Pitts, Executrix, Substituted on Revivor), *Appellee*, v. (The Blair Milling Company, Mary S. Adams et al.) The Exchange National Bank of Atchison, Wiley Chapman et al., *Appellants*.

### SYLLABUS BY THE COURT.

1. Farm Lease—*Lease Assigned by Landlord—Assignee Became Vested With the Rights of Landlord Under the Lease.* An assignment indorsed on a lease of farming land providing for payment of money rent, duly executed and delivered by the landlord, and stating he assigned all his right, title and interest in the contract of lease, operated to sever rent to accrue from the reversion, and to assign such rent to the assignee, who thereupon became vested with the privileges of the landlord respecting rent, statutory lien on crops, and statutory remedy for conversion of crops.

2. Same—*Assignment by Landlord of Notes Given for Rent—Rights Vested in Assignee.* Assignment by the landlord of promissory notes given by his tenant representing installments of money rent for farming land, is in legal effect assignment of the rent, and vests in the assignee the privileges of the landlord respecting rent, statutory lien on crops, and statutory remedy for conversion of crops.

3. Same—*Construction of Section R. S. 67-526—Words "Rent Due" Interpreted.* The words "rent due" in R. S. 67-526, providing that the person entitled to rent may recover from a purchaser of the crop with notice of the rent lien the value of the crop purchased to the extent of the rent due, relate to proportion of value of crop, and do not limit recovery to rent in arrears.

4. Same—*Costs Properly Adjusted.* The proceedings considered, and *held*, costs were properly charged upon a fund in court.

Appeal from Atchison district court; William A. Jackson, judge. Opinion filed February 7, 1925. Affirmed.

*W. P. Waggener, J. M. Challis, O. P. May,* and *B. P. Waggener,* all of Atchison, for the appellants.

*T. A. Moxcey,* of Atchison, for the appellee.

The opinion of the court was delivered by

Burch, J.: The action was one by the assignee of rent to recover from a purchaser of the crop grown on the leased premises. The purchaser paid the price into court, and interpleaded a chattel mortgagee of the crop and the landlord and tenant. The tenant was allowed an offset against the rent and, plaintiff having died, his executrix was awarded sufficient of the fund to satisfy the remainder of the rent. The chattel mortgagee and the tenant appeal.

Adams leased to Chapman, by written lease beginning March 1, 1918, and ending March 1, 1923, for an annual rental of $800, payable semiannually, according to the terms of the ten promissory notes. On October 1, 1920, Adams indorsed the notes subsequently falling due to Pitts, and executed and delivered to Pitts the following instrument indorsed on the lease:

"For value received we hereby assign to E. P. Pitts all our rights, title and interest under the within contract of lease, and authorize full control thereof as completely as we ourselves would have as owner of the property herein described, with authority to sublet to others in the event that the lessee therein named shall fail to comply with this contract."

All the rent notes were paid except the last two, for $400 each, due respectively March 1 and December 1, 1922. Chapman knew Pitts held the notes, and paid $100 on the note due March 1, but did not know of the assignment. In July, 1922, Chapman contracted to sell the wheat crop of that year to the Blair Milling Company, of Atchison, to be delivered on track at Hawthorne. Delivery was completed on July 31. There was evidence sufficient to show the milling company purchased with notice. The milling company did not pay the tenant for the wheat but, when sued for $700, the amount of plaintiff's claim, paid into court the full price of the wheat, $1,131.50, interpleaded every one interested, and was discharged by the court from further liability. The Exchange National Bank claimed the entire fund under a matured chattel mortgage of the crop, given by the tenant in 1921. The tenant claimed an offset against the rent. The landlord counterclaimed against the tenant. The court found the tenant was entitled to recover from the landlord the sum of $65.05. That sum was deducted from the rent notes, and plaintiff was given a lien on the fund in court for the balance due on the notes. The remainder of the fund was awarded to the bank, whose chattel mortgage was subject to plaintiff's lien, if plaintiff was entitled to a lien.

The action was commenced against the milling company on August 19, 1922, under R. S. 67-526, which reads as follows:

"The person entitled to the rent may recover from the purchaser of the crop, or any part thereof, with notice of the lien, the value of the crop purchased, to the extent of the rent due and damages."

Other pertinent statutes read as follows:

"Any rent due for farming land shall be a lien on the crop growing or made on the premises. Such lien may be enforced by action and attachment therein, as hereinafter provided." (R. S. 67-524.)

"When any such rent is payable in a share or certain proportion of the crop, the lessor shall be deemed the owner of such share or proportion, and may, if the tenant refuse to deliver him such share or proportion, enter upon the land and take possession of the same, or obtain possession thereof by action of replevin." (R. S. 67-525.)

R. S. 67-527 and 67-528 give to the person to whom rent is owing, whether due or not, if due within a year, remedy by attachment under certain circumstances. The bank contends no recovery could be had under R. S. 67-526 on account of the note maturing December 1, 1922, because the note was not due when the action was commenced; that the words "rent due" refer to maturity of rent obligation; and that the remedy against a purchaser applies only for protection of rent in arrears. The sections relating to remedy by attachment are appealed to in support of the argument, and a plea is made for privilege on behalf of tenants to defeat rent liens by sale of crops at convenient seasons, before maturity of rent obligations.

The statutes referred to do two things: First, they make rent due for farming land a lien on the crop grown on the premises. Second, they provide remedies for protection and enforcement of the lien. The lien exists from incipience of the crop, and exists independently of remedies which it may or may not be necessary to invoke for protection of the lien. (*Scully v. Porter*, 57 Kan. 322, 46 Pac. 313; *Bank v. Equity Exchange*, 113 Kan. 696, 216 Pac. 278; *Snodgrass v. Carlson et al.*, 117 Kan. 80, 230 Pac. 83.) If rent be payable in share of crop the lien is protected by regarding the lessor as owner of the share coming to him, and giving him privilege of distress or action of replevin. If the tenant sell the crop, the lien is protected by privilege to sue the purchaser. If the tenant be about to remove the crop, the lien is protected by remedy of attachment, and under other circumstances attachment may be resorted to for protection of the lien. Action against a purchaser with notice is simply an action for conversion of property subject to lien. The lien exists for protection of the entire rent, whenever it becomes payable (*Snodgrass v. Carlson et al.*, 117 Kan. 80, 82, 230 Pac. 83), and the lien may no more be defeated in part by conversion before a final installment becomes due than it may be defeated entirely by conversion before the first installment becomes due. The remedy for conversion, however, does not extend to value of the entire crop, unless it be necessary to protect the lien. Just as the words "rent due" in R. S. 67-524, do not limit the lien to matured installments, so the same words in R. S.

67-526 do not limit protection of lien to matured installments. They refer to proportion of the value of the crop, and merely limit amount of recovery to a sum necessary to accomplish the purpose of the lien.

The remaining question presented by the bank is whether plaintiff became assignee of the rent, and as such entitled to benefit of the lien, and of the remedy for conversion.

In this state, the owner of land may carve out of his estate and transfer to another whatever quantity of interest he desires. (*Miller v. Miller,* 91 Kan. 1, 136 Pac. 953.) Adams might have deeded to Pitts the portion of the reversion extending to the expiration of the lease, just as he might have deeded the entire reversion, which would have carried rents to accrue. No particular form of instrument would be necessary to accomplish the purpose, and it would not be necessary that the writing be "under seal," or that it be acknowledged, unless the purchaser desired to record it. The subject, however, is not important. The assignment indorsed on the lease effected an assignment of rents to accrue to the end of the term. Rents are severable from the reversion, and assignable, and whatever more the assignment accomplished or failed to accomplish, it was sufficient to place the assignee in the shoes of the assignor with respect to rent, lien of rent on crops, and remedy for conversion.

Assignment of the lease may be disregarded. The contract of lease provided for payment of rent in stated installments, "as evidenced by ten certain notes." Of course the rent was not paid by the notes. The notes stood for and were convenient evidence of installments of rent (*Lee v. Joslyn,* 184 Iowa, 1336, 1338), and assignment of the rent notes was in legal effect assignment of rent. The lien created by R. S. 67-524 is not given to a person. It is charged on crops as security for rent and, although usually called "the landlord's lien," is in fact a rent lien. The remedy for conversion is given to the person entitled to rent. Therefore the holder of the rent notes stood in the shoes of the landlord with respect to rent, lien, and remedy.

The following cases lend support to the views which have been expressed: *Westmoreland & Trousdale v. Foster,* 60 Ala. 448; *Ala. Gold Life Ins. Co. v. Oliver,* 78 Ala. 158; *Keeley Brewing Co. v. Mason,* 102 Ill. App. 381; *Strother v. The Steamboat Hamburg,* 11 Iowa, 59; *Lufkin & Wilson v. Preston,* 52 Iowa, 235; *Haywood & Son v. O'Brien,* 52 Iowa, 537; *Perrin v. Lepper,* 34 Mich. 292; *Kelly v. Bowerman,* 113 Mich. 446; *Newman v. Bank of Greenville,* 66 Miss. 323.

Complaint is made because costs were taxed to the fund and not apportioned among the parties. The action for conversion did not last very long, and the contest became one over amount and priority of lien. The landlord did not dispute plaintiff's lien, and the tenant did not dispute the bank's lien. The bank in its pleadings became a partisan of the tenant, and championed the tenant's claim of offset to the rent notes. The plaintiff in his pleadings championed the landlord's counterclaim against the tenant, but did not resist allowance against the rent notes of any proper offset the tenant might establish. The contenders for the fund, which was not sufficient to satisfy both liens, were plaintiff and the bank. The battle between their allies, the landlord and the tenant, was fought for their ultimate benefit, and costs of the contest were properly charged upon the fund.

The judgment of the district court is affirmed.