No. 29,862.

D. M. Bowland, *Appellant*, v. Art McDowell, Intervener, *Appellee* (The Farmers Union Shipping Association, *Defendant*).

(297 Pac. 691.)

Opinion filed April 11, 1931.

F. W. *Young*, of Stockton, for the appellant.

D. A. *Hindman* and W. K. *Skinner*, both of Stockton, for the appellee.

The opinion of the court was delivered by

Johnston, C. J.: This was an action of replevin brought by D. M. Bowland to recover possession of 236½ bushels of wheat grown by Harry Snow, a tenant on the farm of defendant, Art. McDowell. Bowland claimed the wheat by virtue of chattel mortgages given by Snow to the Citizens State Bank, which had duly assigned its claim and mortgages to Bowland. McDowell intervened, claiming the wheat under a landlord's lien, and in the trial he prevailed. Bowland appeals.

The case was submitted upon agreed facts, the substance of which is that in September, 1923, by a written lease, Snow rented the land

from McDowell, the rent for the plow land to be paid in a share of the crop and a cash rental for the pasture land. Thereafter written leases were executed for the years 1924, 1925 and 1926, containing the same terms as in the original lease of 1923. The grain rents for each year were paid, but the cash rentals were not fully paid, and in the leases it was stipulated that if any remained unpaid it was to be carried forward and put into the lease for the following year. On August 1, 1927, there was $200 of accumulated cash rentals unpaid. In that year Snow delivered the crop of 1927 to a shipping association which was named as a defendant, and it refused to make payment on account of the conflicting claims of the mortgagee and the lessor. As soon as the action was begun the shipping association deposited its check with the court for $338.50, the amount due on the wheat, and disclaimed any further interest or responsibility in the action. The only issue in the action, therefore, was between the plaintiff, Bowland, and the intervener, McDowell, the latter claiming only $225 due him as rent. The amount of indebtedness of Snow to Bowland was in the aggregate $462. The mortgages under which Bowland claims were recorded, but no renewal affidavit was ever filed for them. On February 20, 1926, Snow executed one of the mortgages on a two-thirds interest of the wheat to secure the payment of $350, and on September 23, 1926, he executed another mortgage on seventy-five acres of the wheat to secure the same notes. It was admitted that Snow was indebted to his landlord in the sum of $225, and also admitted that Snow was indebted to the plaintiff in the sum of $462.

The judgment of the court sustaining the landlord's lien must be affirmed. That the cash rent was due and unpaid is conceded. A part of it, $200, was due for the earlier years of the tenancy, that is, for the years 1924, 1925 and 1926. The appellant contends that the delinquent rental for the years preceding the last one cannot be carried forward and treated as a lien superior to his mortgage lien. While there were written leases for each of the years, the delinquent rentals were carried forward and placed in the lease of the following year. The leases contained the same terms and conditions for the whole period of the tenancy and are to be regarded as a continuing tenancy. (*Towle v. Weise*, 64 Kan. 760, 68 Pac. 637.) In *Snodgrass v. Carlson*, 117 Kan. 80, 230 Pac. 83, where the tenant held over beyond the period of the written lease under the

same terms and conditions, it was held that it did not constitute a new and distinct tenancy and thus operate to defeat the landlord's lien for the unpaid rent. It was said that—

"Generally where there is an agreement that the holding over shall be under the terms of the former lease, it is considered as a continuing tenancy, just as though the lease had been written for two years in the first instance. [Citing *Towle v. Weise,* supra.]" (p. 83.)

Here the terms of the tenancy were the same throughout the four-year period and, besides, the tenant recognized the unpaid rental as a continuing obligation as evidenced by the renewal leases themselves, in which he agreed that the unpaid rental should be carried over to following years as existing obligations. The rental not having been paid, or otherwise discharged, must be regarded as secured by the landlord's lien as against a mortgagee or purchaser with notice.

The matter of notice is challenged by the appellant, and it appears that the bank, his assignor, did not have actual notice of the landlord's lien when the mortgages were given, and it also appears that the leases were never placed on record. However, the lack of actual notice to a mortgagee or purchaser will not give superiority to the mortgage lien over that of the landlord if there is constructive notice of the landlord's lien. Such notice may be as effectual as actual notice, and if the mortgagee had knowledge of facts which should have put him upon inquiry, it constitutes notice of whatever the inquiry would have disclosed. (*Scully v. Porter,* 57 Kan. 322, 46 Pac. 313; *Stadel v. Aikins,* 65 Kan. 82, 68 Pac. 1088; *Maelzer v. Swan,* 75 Kan. 496, 89 Pac. 1037; *Mangum v. Stadel,* 76 Kan. 764, 92 Pac. 1093.) When the bank procured the tenant to execute a mortgage on two-thirds of a growing crop on land not owned by the tenant, it necessarily learned that some one other than the tenant had an undivided interest in the crop. The one-third interest of a crop, which is the customary share of a landlord where rent is payable in a share of the crop, warned the bank that the crop was grown on leased land. Under the authorities cited, that was enough to put him on inquiry, and if he failed to make such inquiry he is not a mortgagee or purchaser without notice.

In *Stadel v. Aikins,* supra, it was said:

"When a person purchases grain from a tenant, either on or some distance from the leased premises, with knowledge of the relation of landlord and tenant or of the facts which should have prompted the inquiry as to the ex-

istence of a lien in favor of the landlord on crops grown on the leased land, he cannot escape liability to the landlord. Such knowledge is equivalent to notice." (p. 85.)

The statutory lien of the landlord attaches at the beginning of the tenancy and continues in force regardless of when the rent becomes due, and the tenant cannot by encumbrance or sale defeat that lien. Any mortgage given by him must be regarded as inferior to the lien of the landlord. (*Snodgrass v. Carlson*, supra; *Pitts v. Milling Co.*, 117 Kan. 626, 233 Pac. 114.)

Attention is called to the fact that the leases were not placed on record, as might have been done, and in that way have given the appellant notice of the landlord's lien. A record of the lease is not essential to its validity nor to the imposing of the statutory lien. In *Scully v. Porter*, supra, it was held that—

"No writing is required to give force to the lien nor is the filing or recording of the contract of lease a prerequisite to the creation of a lien. Many of the leases, being for a term of one year or less and not in writing, cannot be filed or recorded in a public office, and this indicates plainly enough that the legislature did not regard record notice essential to the existence of a landlord's lien." (p. 324.)

It appears that the mortgage of appellant was not renewed by affidavit as the statute requires in order to preserve its validity, but the landlord does not need to rely on that defense since upon the grounds mentioned his lien, regardless of the absence of a renewal affidavit, is superior to that of the appellant.

The judgment is affirmed.

SLOAN, J., not participating.