No. 33,540

GEORGE F. ERESCH, *Appellant,* v. JOHN N. QUAKENBUSH et al.,
*Appellees.*

(76 P. 2d 820)

Opinion
filed March 5, 1938.

*Leon W. Lundblade,* of Beloit, for the appellant.
*Ralph H. Noah,* of Beloit, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This was an action on account for money, expenses, and materials furnished in farming operations on an oral contract between plaintiff as landlord and the first-named defendant as tenant. It covers a period of nine years, and includes the raising of lambs, as well as farming. On account of drought and failure of crops plaintiff alleges defendant became greatly indebted to plaintiff because of being unable to meet the expenses of several of these intervening years; that in the summer of 1935 a new oral contract was made by them as to putting in wheat and the expenses thereof and the disposition of the crop or proceeds thereof. There was a good crop of wheat harvested in 1936, amounting to about 7,500 bushels. It is alleged by plaintiff that the oral contract of 1935 included a reference to the previous indebtedness of the defendant to the plaintiff and applying the crop of 1936 toward its payment; that if no crop were raised the expenses would be paid by the plaintiff, but if a crop were produced the entire proceeds of it should be turned over to the plaintiff, one half of which was to pay off wheat expenses, other expenses and money advanced to the defendant, and the bal-

ance to be applied on the account, and any balance remaining to be applied on indebtedness to the plaintiff and the First National Bank, owner of part of the land being farmed by defendant.

The answer of the first-named defendant, the tenant, was a denial of such contract, and alleged that the oral contract of 1935 concerning the wheat crop of 1936 was, if a crop were raised the plaintiff and the defendant would share the expense and the crop equally, the plaintiff's share to include the landlord's share of the crop, and if no crop were raised the tenant was not to be charged with the expense, and there was no agreement of any kind that the title to the wheat or any proceeds thereof would be in plaintiff. Both petition and answer contained other details which will be mentioned later.

There was a controversy throughout most of the trial as to whether the plaintiff's action was upon an account or an account stated, and it extended to the right of trial by jury. The court called a jury in an advisory capacity, and later during the trial it was announced there was no disagreement as to the amount of plaintiff's claim, and near the close of the trial the defendant, who was the tenant, offered to confess judgment for that undisputed amount, and judgment was so rendered. The jury did not render a general verdict, but only answered special questions, which the trial court approved and adopted. For these reasons we will not be concerned with a review of any of the matters involved in either of these two questions which engaged the attention of the trial court to a considerable extent.

The petition further alleged that the wheat crop was harvested and placed in two elevators and in a bin on the land, and that whatever interest the tenant might have in said wheat was subject to the indebtedness due the plaintiff and the cost of harvesting. That the defendant tenant, with the intent to evade the payment of his indebtedness to the plaintiff, executed in June, 1936, chattel mortgages on the undivided one-half interest in different tracts of such wheat land. The petition also alleged that said mortgages are inferior to the rights of the plaintiff and should not be considered as liens until the amounts due the plaintiff are paid, and that because the defendant tenant was about to convert said wheat into money for the purpose of placing it beyond the reach of the plaintiff as a creditor with the intent to defraud the plaintiff, the latter asked that the property of the defendant, including the grain in the elevators, be attached to recover the sum of $3,218.97, which the tenant owed the plaintiff, and that the chattel mortgagees, made defendants therein, be required to

answer why their purported lien should not be held for naught and inferior to the plaintiff's lien.

Motions of defendants were filed attacking said petition, which were overruled in part and sustained in part, and an amended petition was filed which contained the allegations as above recited but in greater detail as to the oral contract made in 1935 concerning the wheat crop of 1936 and the application or use of one half of it or its proceeds to pay the expenses of the crop and the earlier indebtedness of the tenant to the plaintiff and the bank. The amended petition alleged in greater detail than in the original petition the placing of chattel mortgages on the undivided one-half interest in the wheat crop as being done with fraudulent intent, to the detriment of the plaintiff and in violation of the terms of the oral agreement made in 1935; that due to the agreement of 1935 plaintiff has a first, prior· and paramount lien on all of said wheat for the payment of the indebtedness and the expense of harvesting and hauling; and whatever interest the tenant might have, the same is subject to the indebtedness due the plaintiff and the cost of harvesting, hauling and all expenses incidental to the planting and harvesting of said crop and the other indebtedness to the plaintiff, and that all of said wheat is, as per the oral agreement, the property of the plaintiff. The amended petition concluded with a prayer for a first and prior lien on all of such wheat located in the elevators, as described, subject to the conditions contained in the oral agreement and judgment against the holders of the chattel mortgages therein, holding such mortgages to be void and of no effect as against plaintiff's wheat.

Answers were filed by the tenant and his wife, the representatives of the elevators and the holders of the chattel mortgages. The answers were general denials of the allegations of the amended petition and alleged the good faith of the making and giving of the chattel mortgages. The verified answer of the tenant pleaded estoppel in, that plaintiff, in his original petition, claimed a lien upon an undivided one-half interest in said wheat, and in his amended petition claims that he has now and has ever had an ownership of it.

A reply in the form of a general denial was filed and the case was submitted by the trial court to an advisory jury on the question of the nature and terms of the oral contract of 1935 as to the wheat crop of 1936. The following are the four questions submitted to the jury and the answers thereto given by the jury:

"1. Did the plaintiff and defendant orally agree that the title of all the wheat in question would be in the plaintiff? A. No.

"2. Did the plaintiff and defendant orally agree that the expenses of putting in the wheat in question were to be paid out of Quakenbush's undivided one-half of the wheat? A. No.

"3. Did the plaintiff and defendant orally agree that the expenses of putting in the wheat in question were to be paid out of the wheat crop before division by the plaintiff and defendant? A. Yes.

"4. If you answer 'no' to questions Nos. 1 and 2, then under the evidence and instructions of the court in this case, what rentals do you find that the plaintiff is entitled to and what rentals do you find the defendant is entitled to? A. Expenses to be paid and then net proceeds to be divided equally."

As stated above, the parties agreed during the trial as to the amount of indebtedness of the defendant tenant to the plaintiff, so the rulings of the trial court on that question prior to such agreement as to whether the suit was on an account or on an account stated, whether right or wrong, become immaterial. The question submitted to the advisory jury was the nature of the contract made in 1935 as to the putting out and growing of a wheat crop for 1936. There was a direct conflict of testimony between the two contracting parties, with very little corroborating evidence. All the answers of the jury were in favor of the defendant tenant, and they were approved by the trial court, and our duty with reference to such findings of fact is ended when we find that there was sufficient evidence, if believed, to support such findings, and we so find.

The court included in its instructions to the jury the circumstances pleaded in the answer as to estoppel, and sustained the demurrer of the defendant as to the chattel mortgages given by the defendant on an undivided one-half interest in the growing wheat in June, 1936, being fraudulent and given with the intention to hinder, delay and defraud the plaintiff in the collection of a debt due him by the tenant.

The appellant first insists there was error in the procedure, particularly in two matters: first, the ruling during the introduction of evidence, holding the action to be on an account stated. Counsel for appellant frankly admits this is not so material, since defendant has confessed judgment in an amount about which there is no controversy. The second procedural error that is urged is with reference to the estoppel pleaded in the answer and the instructions relating thereto. The court instructed the jury that if the evidence tended to show that plaintiff claimed at the time this action was commenced that the title to the wheat in question was in the defendant and had caused an attachment order to issue on that theory, that may be considered as a circumstance tending to show the kind of a

contract plaintiff at that time understood to be between him and the defendant with reference to the wheat in question, and if plaintiff once claimed title thereto to be in the defendant he would be estopped from later claiming that plaintiff had the title thereto. There was evidence of the plaintiff's having caused attachment to be issued at the commencement of this action, which under the pleadings and evidence in this case would justify the giving of such an instruction to consider it as a circumstance in determining the nature of the contract between the plaintiff and defendant as to the tenant's part of the 1936 wheat crop. It is said in 20 C. J. 12, under the title of "Election of Remedies":

"All actions which proceed upon the theory that the title to property is in plaintiff are inconsistent with those which proceed upon the theory that title is in defendant."

The case of *Bank v. Jesch,* 99 Kan. 797, 163 Pac. 150, involved a tenant's share of a wheat crop, also the question of estoppel and the inconsistency of claims by the landlord.

In the case of *Lillard v. Johnson County,* 102 Kan. 822, 172 Pac. 518, it was held:

"The doctrine of estoppel requires of a party consistency of conduct when inconsistency would work substantial injury to the other party." (Syl. ¶ 1.)

It is further claimed that the answer to question No. 4 is a conclusion requiring the setting out of evidence. It might have been preferable to have asked two or three questions instead, with the same result. A familiar instance is in negligence cases, where instead of asking a separate question as to each item of negligence alleged, the jury is asked to state the act of negligence. We find no error in these procedural features of which complaint is made.

The appellant considers together several errors assigned, all of which concern the landlord's lien on the crop. Two sections of the statute are cited in this connection. They are as follows:

"Any rent due for farming land shall be a lien on the crop growing or made on the premises. Such lien may be enforced by action and attachment therein, as hereinafter provided.

"When any such rent is payable in a share or certain proportion of the crop, the lessor shall be deemed the owner of such share or proportion, and may, if the tenant refuse to deliver him such share or proportion, enter upon the land and take possession of the same, or obtain possession thereof by action of replevin." (G. S. 1935, 67-524, 67-525.)

These sections apparently refer to the landlord's share and his right to obtain or recover the same. In the case at bar the landlord's share

was not involved except as to the expense of putting out, harvesting and hauling the crop, it being admitted that the landlord was entitled to one half the crop less one half the expense in connection with growing and harvesting the same. Several decisions in this and other states are cited in support of the landlord's lien for his rent. It cannot be seriously disputed that under our statute the landlord in this state has a lien on the share of the tenant, but it is for his rent. Therefore, if his rent is not withheld or opposed, there would naturally be no lien. In this case the only dispute was as to half the expense in connection therewith as claimed by the tenant and found by the advisory jury, the landlord claiming he was not liable for any of the wheat expense.

The item of $200 for rent of pasture for 1936 is pointed out as being in the bill introduced in evidence by the plaintiff which might properly be included in a lien for ordinary rent, but there being no dispute as to the amount of the indebtedness, and the jury finding a definite wheat contract as to the crop of 1936, we cannot go outside of the findings, which had the approval of the court, to reach these two items that might otherwise have been included in that for which the plaintiff might have had a lien. We will continue the consideration of this subject in connection with the two other errors urged by the appellant, viz., that the court erred in sustaining defendant's demurrer to the testimony of plaintiff attacking the chattel mortgages and in approving the chattel mortgages given by the tenant to other parties.

The evidence showed that the defendant tenant gave four mortgages about the middle of June, 1936, upon his undivided one-half interest in the wheat in the total sum of $3,418.50. The plaintiff argues that the giving of these mortgages showed bad faith on the part of the tenant when he knew that he owed the plaintiff a considerable amount of money as a result of farming operations of previous seasons and years, and the plaintiff's testimony was to the effect that he, the plaintiff, expected to be paid that amount, or at least a part of it, out of the defendant's share of the crop. The plaintiff further contended that the mortgages given by the defendant on the undivided one-half interest in the growing crop were invalid because of the landlord's lien, and that his interest was therefore superior to the lien of any of these mortgages.

Appellant cites many Kansas cases construing and enforcing a landlord's lien on the whole crop for his rent or his share of the

crop, as provided by our statute above quoted, G. S. 1935, 67-524. Among the many cases cited by appellant in this connection is *Bowland v. McDowell,* 132 Kan. 820, 297 Pac. 691. The first paragraph of the syllabus would be quite applicable to the contention of the plaintiff in this case if the wheat crop were to be used for the expenses and indebtedness of the tenant for previous years. It is as follows:

"In a controversy between a landlord and a subsequent mortgagee as to the enforcement of a landlord's lien on crops grown on leased land, where the leases to the tenant had been renewed annually for a period of years, each including the same terms and conditions and each providing that any unpaid rental should be carried over and become obligations of the following years. it is held that the leases should be deemed to be a continuing tenancy and that the lien covered the unpaid rentals of the tenancy, following *Towle v. Weise,* 64 Kan. 760, 68 Pac. 637."

The second paragraph of the syllabus is as follows:

"The notice to a purchaser or mortgagee of the existence of a landlord's lien is sufficient if he has knowledge of facts sufficient to put him on inquiry as to the existence of the lien and the nonpayment of the rent. Such knowledge is deemed to be notice of whatever the inquiry would have disclosed."

There was evidence introduced in the case showing that one or two of the mortgagees had knowledge of the indebtedness of the defendant to the plaintiff incurred during previous years, but there was no evidence of their knowledge of any leases being in writing or of the main controversy in this case being whether or not the oral lease made in the fall of 1935 concerning the wheat crop of 1936 included the former indebtedness. The jury finally found that it did not have reference to anything else but the wheat crop, so this decision cannot be made to apply to the facts in this case very specifically because of this controversy which did not exist in the Bowland case, *supra.*

Appellant cites the case of *Hamilton v. Maas & Brother,* 77 Ala. 283, where it was held that the landlord's lien for rent is superior to that of a mortgagee and such lien would cover advances made by the landlord to enable the tenant to raise the crop, referring to a specific statute (Code, §§ 3286-3287), which statute specifically provided that the landlord's lien on the crop should cover the advances made by him to the tenant to enable him to grow the crop. This is entirely different from the statute in this state where the lien is given only for the rent, and the decision in the Bowland case, *supra,* was not based upon a statutory lien but a written agreement that the former indebtedness should be carried forward and put in the

lease of the following year. So we are not helped from the appellant's viewpoint by either of these decisions where our statute does not provide for the lien covering the former indebtedness, as the Alabama statute does, and we have no written agreement as to carrying forward the indebtedness, but instead we have only a controversy on that question where the jury and the court failed to accept the theory of the landlord as to that matter.

As between the plaintiff and the mortgagees, each has limited rights which, however, must be consistent throughout. No fraud on the part of any of the defendants appears to have been established in this case; only a knowledge on the part of some of the mortgagees of the indebtedness of the defendant to the plaintiff for advances and expenses for earlier years seems to have been shown toward that end.

In *Bank v. Haskell County*, 61 Kan. 785, 60 Pac. 1062, it was held:

"When a debtor assigns and delivers property to his creditor in payment of the debt, and the creditor, instead of holding the property and applying it on the debt, causes the issuance and levy of an attachment on it as the property of the debtor, and as against the execution creditor of their common debtor litigates their adverse rights thus to levy on the property and apply it, through judicial proceedings, on their debts, he cannot, when defeated in the litigation, set up his claim on the property by reason of the assignment and delivery which had been made to him, but will be held to have waived his rights under the assignment and delivery and to have elected the remedy by suit and attachment." (Syl. ¶ 2.)

This is largely a fact case—the main fact in controversy being whether or not the plaintiff had a landlord's lien. The jury found otherwise. He had testified definitely several times that he was the owner of the mortgaged wheat of the 1936 crop which was designated as the tenant's undivided one-half interest in the crop.

The case of *Johnson v. Beach*, 146 Kan. 781, 73 P. 2d 1040, was one where both replevin and attachment were used to protect the lien of the landlord in his share of the crop, and in the opinion it was said:

"A lien is not ownership, general or special. It is a claim or charge for the payment of an obligation, and the statute provides the method of enforcement. Under attachment the property may be sold, and the rights of both parties are protected. But in replevin, if plaintiff is the absolute owner, he keeps the property and is not required to account to anyone." (p. 783.)

We conclude that there was no error in the proceedings nor in the rulings as to the interest of the chattel mortgagees.

The judgment is affirmed.